# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**HEATHER BURKE,**

      **Plaintiff,**

**v.**                                            **Case No. 16-cv-0470 MCA/SMV**

**STATE OF NEW MEXICO, EDWYNN BURCKLE,**
**JAY HONE, MICHAEL GALLEGOS,**
**ANGELA DAWSON, BRENDA GUETHS,**
**KAREN BALTZLEY, GENERAL SERVICES**
**DEPARTMENT OF THE STATE OF NEW MEXICO,**
**and LARA WHITE-DAVIS,**

      **Defendants.[1]**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiff's Third Motion for Leave to Amend [Doc. 77],[2] filed on December 5, 2017. Defendants responded on January 12, 2018. [Doc. 82]. Plaintiff replied on January 26, 2018. [Doc. 85]. The Honorable M. Christina Armijo, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 88]. I have considered the briefing, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, I recommend that Plaintiff's motion be GRANTED IN PART AND DENIED IN PART.

---

[1] The State of New Mexico is no longer a party in this action. *See* [Docs. 50, 53]. All other Defendants were named in Plaintiff's Amended Complaints [Docs. 53, 54] following remand from the Tenth Circuit.

[2] Plaintiff titled this motion a "second" motion for leave to amend. [Doc. 77] at 1. Because it is, in fact, her third motion for leave to amend following remand from the Tenth Circuit, I refer to it as such to avoid any confusion.

# I. Background

In January 2013, Plaintiff began working for the New Mexico General Services Department ("GSD") as an "IT Generalist." [Doc. 49-1] at 2. In that position, she "provid[ed] IT support and customer services for GSD." *Id.* Plaintiff alleges a number of violations of state and federal law stemming from her employment in that position. She alleges that men in her department were being paid more than women in the same positions. She further alleges harassment at the hands of a co-worker that, when reported to her supervisors, went unchecked. She alleges that she uncovered "malfeasance" and "gross misconduct and . . . mismanagement" within her department but was retaliated against and subjected to a hostile work environment when she reported these issues. She contends she was similarly retaliated against for reporting serious security and privacy breaches at GSD. Plaintiff also alleges that she was retaliated against and subjected to a hostile working environment as a result of being diagnosed with cancer and during the course of her treatment. *See* [Doc. 49-1] at 2–4.

Plaintiff, proceeding pro se, filed suit in state court in May 2016 against the State of New Mexico and several state employees. [Doc. 1-2]. She alleged claims based on the Fair Pay for Women Act ("FPWA"), the New Mexico Whistleblower Protection Act ("WPA"), and 42 U.S.C. § 1983. Defendants removed the case to federal court and moved to dismiss the claims. [Docs. 1, 10]. Plaintiff subsequently moved to amend her complaint by substituting GSD in place of the State of New Mexico as a defendant and adding certain additional claims and defendants. [Doc. 29]. On October 3, 2016, the Honorable Robert A. Junell, Senior United States District Judge, granted Defendants' motion to dismiss all of Plaintiff's claims and denied her leave to amend her complaint. [Docs. 41, 42].

Plaintiff appealed to the Tenth Circuit, which affirmed in part and reversed in part. 696 F. App'x 325 (10th Cir. 2017); [Doc. 49-1]. The Tenth Circuit affirmed the dismissal of Plaintiff's claims except as to her WPA claim against Defendant Burckle, Secretary of the General Services Department, in his official capacity.[3] [Doc. 49-1] at 20. And it affirmed the denial of leave to amend except as to the addition of FPWA and EPA claims against GSD, the addition of a WPA claim against GSD, and the submission of an amended § 1983 privacy claim. *Id.* at 20–21. The Tenth Circuit remanded "for further proceedings as to violation of privacy, wage discrimination, and whistleblowing that are consistent with this Order and Judgment." *Id.* at 21. On remand, Judge Junell vacated the judgment in part and granted Plaintiff leave to file an amended complaint. [Doc. 50]. Consistent with the Tenth Circuit's order, Judge Junell granted Plaintiff leave:

> (1) to amend her privacy claim under 42 U.S.C. § 1983 and cure the deficiencies noted in the Tenth Circuit's Order and Judgment dated June 8, 2017; (2) to name GSD as a defendant in this action; (3) to add a WPA claim against GSD in addition to Plaintiff's WPA claim against Edwynn Burckle, in his official capacity as Secretary of the General Services Department; and (4) to add discrimination claims under New Mexico's [FPWA] and the federal [EPA] against GSD. Plaintiff shall **not** include any other previously-dismissed claims in her Amended Complaint, except as specified by this Order.

[Doc. 50] at 1–2. He ordered Plaintiff to file her amended complaint within 21 days. *Id.* at 1.

On September 5, 2017, Plaintiff filed a 46-page amended complaint. [Doc. 53]. The amended complaint stated FPWA and EPA claims against GSD; § 1983 claims for violation of

---

[3] The Tenth Circuit also vacated the judgment "to the extent it purported to dismiss non-existent § 1983 claims against Secretary Burckle in his official capacity." [Doc. 49-1] at 20.

the Fourth Amendment against Defendants Burckle and Baltzley in their individual capacities; and a WPA claim against GSD. Plaintiff also asserted several new claims that she had never previously raised. She alleged violation of the New Mexico Human Rights Act ("NMHRA") for gender discrimination and harassment, disability discrimination, and failure to accommodate; violation of the New Mexico Fraud Against Taxpayers Act ("FATA"); violation of the New Mexico Inspection of Public Records Act ("IPRA"); breach of contract and breach of the implied covenant of good faith and fair dealing; and violation of the Family and Medical Leave Act ("FMLA").[4] A week later, on September 13, 2017, Plaintiff filed a second amended complaint, without requesting leave of the Court to do so. [Doc. 54]. The second amended complaint added several new paragraphs and made additional changes to existing allegations.

Defendants moved to strike both amended complaints pursuant to Fed. R. Civ. P. 15(f). [Doc. 56]. They asserted that the Tenth Circuit "narrowly set the parameters under which" Plaintiff could file an amended complaint. *Id.* at 6. The Tenth Circuit's order (and Judge Junell's corresponding order on remand) "made clear" that "the only permissible defendants in Plaintiff's Amended Complaint are the GSD and Defendant Burckle (official capacity only) and the only permissible causes of action are" a § 1983 privacy claim, a FPWA/EPA discrimination claim, and a WPA claim. *Id.* at 5. Allowing Plaintiff to exceed the scope of the Tenth Circuit's remand order without first obtaining leave of the court would contravene the "law-of-the-case" doctrine and the mandate rule, which require trial courts to conform to the terms of the remand.

---

[4] As to the FATA and IPRA claims, the amended complaint specifies that the claims are asserted against GSD. As to the other claims, Plaintiff does not specify against whom they are asserted. In addition to Defendants GSD, Burckle, and Baltzley, Plaintiff names Jay Hone, Michael Gallegos, Angela Dawson, Brenda Gueths, and Lara White-Davis as Defendants in this action.

*Id.* at 6. Plaintiff, in turn, argued that she was directed only not to "include any other previously dismissed claims in her Amended Complaint," except as specified, and that the remand order was silent as to new claims. [Doc. 57] at 2. Therefore, she argued, she should be free to file an amended complaint asserting new claims and adding new defendants. And, to the extent she was required to obtain leave of the Court to add the new claims, she requested that such relief be granted "*nunc pro tunc*." *Id.* at 5. Plaintiff simultaneously filed a separate motion seeking leave to amend her complaint *nunc pro tunc*. [Doc. 59]. The briefing on that motion largely tracked the briefing on Defendants' motion to strike.

While these two motions were pending, Plaintiff filed two *additional* motions for leave to amend. Plaintiff's second motion for leave to amend sought to add additional claims on top of those already asserted in her amended complaints. She sought to add new claims for violation of the Stored Communications Act ("SCA"), violation of her "freedom of speech and association" pursuant to § 1983, and conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985. [Doc. 76]. She also sought to add counsel for Defendants, Jaclyn McLean, as a Defendant in the case. Plaintiff's subsequent third motion for leave to amend sought to correct technical errors in the caption and title of her most recent proposed amended complaint. [Doc. 77]. In response, Defendants moved the Court to stay any further filings by Plaintiff pending resolution of its motion to strike, arguing that Plaintiff's "barrage of motions and constantly changing complaints are harassing and vexatious." [Doc. 78] at 7.

I entered a Memorandum Opinion and Order on December 22, 2018 [Doc. 80], denying as moot Defendants' motion to strike and Plaintiff's first and second motions seeking leave to amend. In that order, I addressed two arguments raised by Defendants concerning the new

claims and parties Plaintiff sought to add. First, I rejected the argument that Plaintiff's amended complaints should be struck for having added new claims and parties without first obtaining leave of the court. *Id.* at 7–8. I found this argument was moot because Plaintiff had since filed motions seeking leave to amend. *Id.* Second, I was unpersuaded by Defendants' suggestion that the mandate rule and law-of-the-case doctrine precluded Plaintiff from seeking leave to amend altogether following remand. *Id.* at 8–10. Those doctrines cabined the Court's discretion as to matters the Tenth Circuit had already considered on appeal, but not as to matters not "expressly or impliedly disposed of on appeal." *Id.* at 9 (internal quotation marks omitted). I found that Defendants had not shown, at that time, that the Tenth Circuit's order foreclosed Plaintiff from seeking leave to amend. I therefore ordered Defendants to respond to Plaintiff's most recent motion for leave to amend, addressing whether leave to amend should be granted pursuant to Fed. R. Civ. P. 15(a)(2).[5] *Id.* at 9.

Defendants responded to Plaintiff's third motion to amend on January 12, 2018. [Doc. 82]. They argue that Plaintiff's motion should be denied in its entirety for failure to comply with the pleading standards of Fed. R. Civ. P. 8, given the length and confusing nature of the proposed amended complaint. *Id.* at 4–5. Defendants also argue that amendment should be denied pursuant to Fed. R. Civ. P. 15(a)(2). They argue Plaintiff has turned her complaint into a "moving target," seeking to "salvage a lost cause" by pleading new theories of recovery. *Id.* at 3–4 (internal quotation marks omitted). Finally, Defendants argue that amendment would be futile. As a general matter, they contend the new claims Plaintiff seeks to add are merely

---

[5] In the order, I noted that Defendants would be permitted to refine or re-assert their arguments concerning the law of the case and the mandate rule. [Doc. 80] at 10.

"formulaic recitation[s] of the elements of a cause of action," that fail to satisfy the pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2998), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Id.* at 5–8. Defendants argue the futility of several of the proposed new claims with greater specificity.

## II. <u>Legal Standards</u>

Amendments to pleadings are generally governed by Fed. R. Civ. P. 15. Except where amendment is pleaded as a matter of course, a party may amend its pleading only with the consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a). "[T]he court should freely give leave [to amend a complaint] where justice so requires." *Id.* However, a court may deny leave to amend on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). Amendment is futile if the pleading "as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). "The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). The Tenth Circuit has directed district courts to grant leave to amend "when doing so would yield a meritorious claim." *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). The decision whether to grant leave to amend is left to the discretion of the district court. *See, e.g.*, *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Because Plaintiff proceeds pro se, I construe her filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). However, courts must apply the same procedural rules and legal standards applicable to filings drafted by attorneys. *Hall*, 935 F.2d at 1110. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* The Court does not act as advocate for pro se litigants. *Id.*; *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

### III. <u>Analysis</u>

The Tenth Circuit remanded this case "for further proceedings as to violation of privacy, wage discrimination, and whistleblowing" consistent with its order. [Doc. 49-1] at 21. Accordingly, the Court granted Plaintiff leave to file an amended complaint asserting the following: (1) FPWA and EPA claims against Defendant GSD; (2) a § 1983 claim for violation of privacy; and (3) a WPA claim against Defendant Burckle in his official capacity as Secretary of GSD. [Doc. 50] at 1–2. In her motion to amend and proposed amended complaint, Plaintiff asserts these claims and numerous others. Defendants argue that Plaintiff's motion should be denied in its entirety for failure to comply with the pleading standards of Fed. R. Civ. P. 8. Defendants further argue that amendment should be denied with respect to the new claims and parties Plaintiff seeks to add for having made her complaint a "moving target" in violation of Fed. R. Civ. P. 15(a)(2). Failing that, Defendants argue that amendment to re-assert the Fourth Amendment claim and add the new claims and parties would be futile. I consider Defendants' arguments in turn.

**A. Failure to Comply with Pleading Standards of Fed. R. Civ. P. 8**

Defendants argue as an initial matter that Plaintiff's proposed amended complaint fails to satisfy the pleading standards set out in Fed. R. Civ. P. 8. [Doc. 82] at 4–5. Rule 8 requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). As Defendants point out, courts may dismiss complaints for "being unreasonably long, rambling, and otherwise filled with irrelevant material." [Doc. 82] at 5 (citing *Mitchell v. City of Colo. Springs*, 194 F. App'x 497, 498 (10th Cir. 2006)). I find that Plaintiff's proposed amended complaint should not be denied for her failure to comply with the requirements of Rule 8. Defendants are correct that the complaint is prolix and contains a great deal of superfluous information. However, Plaintiff's claims are discernible therein, and the complaint is not so incomprehensible that it should denied wholesale, particularly given that she is proceeding pro se.

**B. Complaint as "Moving Target"**

Defendants also suggest that Plaintiff's motion to amend should be denied in its entirety for having made her complaint a "moving target." [Doc. 82] at 4. While leave to amend should be given freely, "a plaintiff may not seek to amend a complaint in a manner that turns the complaint into a 'moving target.'" *Mayfield v. Doe*, 2017 WL 3168492, at *2 (D.N.M. June 5, 2017); *Minter*, 451 F.3d at 1206 ("Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal." (internal quotation marks and citations omitted)). "It is unreasonable to expect

the Court or the defendants continually to have to adapt as the plaintiff develops new theories or locates new defendants." *Mayfield*, 2017 WL 3168492, at *2. Defendants point primarily to the spate of amended complaints and motions to amend that Plaintiff filed following remand, as detailed above. In my December 22, 2017 order, I disposed of all but the most recent motion and cautioned Plaintiff against further "unnecessary, frivolous, or procedurally improper filings." [Doc. 80] at 10. While Plaintiff will not be permitted to make her complaint a "moving target," she is permitted the opportunity to seek leave to amend on remand.

### C. Futility of Amendment

### 1. *Fourth Amendment Right to Privacy Pursuant to § 1983*

Plaintiff asserted claims under § 1983 for violation of her Fourth Amendment right to privacy for the alleged disclosure of her private medical information and other details related to her employment. Judge Junell dismissed the claims and denied leave to amend, finding that amendment would be futile. The Tenth Circuit upheld the dismissal and denial of leave to amend, agreeing that the claims as pleaded were too speculative to proceed. [Doc. 49-1] at 9–10. However, the Tenth Circuit held that Plaintiff should be permitted another opportunity at amendment to cure the deficiencies it noted. *Id.* at 11. In her proposed third amended complaint, Plaintiff again seeks to assert claims for violation of privacy. She re-asserts claims against Defendants Burckle and Baltzley based on the same factual premises alleged in her original complaint. She also claims violation of privacy against Defendants White-Davis and McLean based on new factual circumstances not previously alleged. [Doc. 77] at 37–40. I find that amendment would be futile as to Plaintiff's § 1983 Fourth Amendment claims, and I recommend that Plaintiff's motion be denied in this respect.

Plaintiff claims that Defendants Burkcle and Baltzley violated her Fourth Amendment right to privacy by disclosing confidential medical and employment-related information. The Tenth Circuit pointed out that in her original complaint and first proposed amended complaint Plaintiff had failed to plead "when the revelations of health information occurred or who was responsible." [Doc. 49-1] at 9. The timing of these revelations was "critical" because Plaintiff had voluntarily disclosed such information to a newspaper reporter. *Id.* If she revealed the information to the reporter "*before* a defendant disclosed it to a third party," she has no viable Fourth Amendment claim. *Id.* at 10. Moreover, Plaintiff did not allege the date she found her personal information on a paper in GSD's parking lot, nor who was personally responsible. *Id.* Section 1983 requires "personal involvement in the alleged constitutional violation." *Id.* (quoting *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)). A "supervisory relationship alone is insufficient" to establish liability under § 1983. *Id.* at 11 (quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009)).

Plaintiff has failed to cure the above deficiencies in her third proposed amended complaint. *See* [Doc. 77] at 29–30, 38–39. She does not adequately allege that her private information was shared before it was voluntarily disclosed. Plaintiff still does not say when she shared her confidential information with the reporter. And, although Plaintiff now states that she found the paper in the parking lot on November 23, 2015, *id.* at 13, that date post-dates the publication of the newspaper articles, which occurred in September 2015, *id.* at 32. Finally, Plaintiff volunteers that she maintained a website, accessible to the public, for the specific

purpose of sharing health-related information.[6]  The Fourth Amendment's privacy protections do not extend to information "knowingly expose[d] to the public."  [Doc. 49-1] at 10–11 (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1147 (10th Cir. 2014)).

Moreover, even if she had sufficiently alleged the timing of the disclosures, Plaintiff has not adequately alleged the personal involvement of Defendants.  She does not state who was responsible for leaving the paper in the parking lot.  And, as to Defendant Burckle, Plaintiff states only that he failed to properly address Plaintiff's complaints, despite having approved a code of conduct addressing the importance of securing confidential information.  [Doc. 77] at 39. These allegations do not show his personal involvement in violating Plaintiff's Fourth Amendment rights.  A supervisor is liable under § 1983 only for his "own culpable involvement in the violation of a person's constitutional rights."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  Plaintiff fails to show any affirmative link between the alleged constitutional violation and Defendant Burckle's own participation, control, or failure to supervise.

Plaintiff further claims, for the first time on remand, that Defendants White-Davis and McLean violated her Fourth Amendment privacy rights by obtaining unauthorized access to a webpage where Plaintiff posted medical and other personal information intended for a selected audience.  [Doc. 77] at 36–37.  Plaintiff maintained a webpage through CaringBridge, a site that allows people to create personalized webpages to share updates on their illnesses or medical

---

[6] Plaintiff contends that her CaringBridge page was not publicly viewable and that Defendants violated the Stored Communications Act and Fourth Amendment in accessing it.  I address, and reject, these arguments *infra*.

conditions.[7]  Based on Plaintiff's chosen privacy settings, her webpage would not appear in the results of a search conducted through a search engine, e.g., Google, and it could only be viewed by a person with a CaringBridge account.  *See id.* at 33–34.  Plaintiff asserts that Defendants learned of her webpage by searching her work email and accessed the page by using a "fake account."  Plaintiff claims that Defendants violated her Fourth Amendment right to privacy when they obtained access to her CaringBridge page by this "use of fraud and deception."  *Id.*

The protections of the Fourth Amendment extend only to information over which the party has a reasonable expectation of privacy.  *Katz v. United States*, 389 U.S. 347, 351 (1967).  As noted above, the Fourth Amendment does not protect against the disclosure of information "knowingly expose[d] to the public."  *Id.*  Generally speaking, "[c]ourts within the Tenth Circuit . . . do not consider social media content as 'private.'"  *Marquez v. Bd. of Cty. Comm'rs Eddy Cty.*, 2015 WL 13638613, at *1 (D.N.M. Jan. 13, 2015) (unpublished); *see also Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1323, 1387 (D.N.M. 2014) ("[O]nly the most ignorant or gullible think what they post on the internet is or remains private.").  Courts routinely have found that there is no right to privacy in internet postings that are publicly accessible.  *See, e.g.*, *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) (no Fourth Amendment violation where government accessed defendant's social media profile through that of a cooperating witness, because defendant had no legitimate expectation of privacy in social media posts disseminated to others, who were free to use the information however they wanted); *Rosario v. Clark Cty. Sch. Dist.*, 2013 WL 3679375, at *6 (D. Nev. July 3, 2013) (unpublished)

---

[7] *See How CaringBridge Works*, CARINGBRIDGE, https://www.caringbridge.org/how-it-works/.

(no reasonable expectation of privacy in user's posts on social networking site Twitter, even if the user had maintained a private account (i.e., his posts were visible only to other users who elected to follow his account), because the user was still "disseminat[ing] his postings and information to the public"); *c.f. Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012) ("[M]aterial posted on a 'private' Facebook page, that is accessible to a selected group of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil law notions of privacy.").

Plaintiff has failed to state a claim for violation of her Fourth Amendment right to privacy because she has no reasonable expectation of privacy in the information she shared on her CaringBridge webpage. Plaintiff's webpage was viewable to any member of the public, so long as that person had a registered CaringBridge account. *See* [Doc. 77] at 33–34. This was neither the least restrictive setting (under which a user's page would be publicly searchable and viewable) nor the most restrictive setting (under which a user's page could be viewed only by those accounts she preapproved). *Id.* Plaintiff acknowledges she was aware of the three privacy options and selected the one that best fit her needs. *Id.* Defendants did not obtain the contents of Plaintiff's website by contacting CaringBridge itself, for example, nor by using the credentials of a person to whom Plaintiff had granted viewing privileges. Any member of the public with a CaringBridge account could view Plaintiff's webpage, and Defendants did. It is not material, for purposes of assessing the viability of Plaintiff's Fourth Amendment claim, that Plaintiff apparently assumed no one but her friends and family would access her page. Plaintiff rightly points out that a person does not necessarily "surrender[] all expectation of privacy" just because she conveys information over the internet. [Doc. 85] at 4. Indeed, I do not find that a violation

14

could never result from obtaining information posted to a social media page. But the facts before me are that Plaintiff did *not* make her account private or accessible only to those she invited to view it. Plaintiff has no reasonable expectation of privacy in information that she made publicly accessible.[8] Therefore, Plaintiff's motion to amend to add § 1983 claims for violation of the Fourth Amendment should be denied as futile.

### 2. New Mexico Human Rights Act

Plaintiff seeks to amend her complaint to add claims for violation of the New Mexico Human Rights Act. She asserts NMHRA claims for gender discrimination and harassment, disability discrimination, and failure to accommodate. [Doc. 77] at 42–45. To bring an NMHRA suit in district court, a plaintiff must first exhaust the administrative grievance process with respect to all named defendants. *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1267 (D.N.M. 2011). Exhaustion requires the claimant to: "(i) file a complaint with the [New Mexico Human Rights Division ("NMHRD") or the Equal Employment Opportunity Commission ("EEOC")] making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the NMHRD." *Id.* A right-to-sue letter from the EEOC does not substitute for an order of non-determination from the NMHRD. *Id.* Additionally, a claimant must exhaust her administrative remedies with respect to *each* defendant. Defendants who are "not named in the administrative proceeding cannot be added to the appeal to the district court." *Id.* (citing *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 10, 127 N.M. 282); *Luboyeski v.*

---

[8] Defendants additionally argue that amendment as to Defendant McLean would be futile because, as a private attorney representing Defendants in this matter, she is not a state actor acting under color of law and thus is not subject to liability under § 1983. [Doc. 82] at 8–10. Because I find that amendment would be futile for other reasons, I need not consider this argument.

*Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380 ("[I]ndividual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhaust her administrative remedies against them.").

Plaintiff states she received her "notice of non-determination" for her "EEOC charges," [Doc. 77] at 5, and has obtained her "right to sue," *id.* at 42. However, as Defendants point out, Plaintiff has failed to specify *which* Defendants she seeks to assert NMHRA claims against. [Doc. 82] at 6. Plaintiff's proposed amended complaint states only that the claims are "official and individual capacity." This matters because without knowing which Defendants Plaintiff is asserting NMHRA claims against, it is impossible to know whether Plaintiff has exhausted her administrative remedies as to those Defendants. Therefore, I recommend that Plaintiff's motion to amend to add NMHRA claims be denied without prejudice.

### 3. New Mexico Fraud Against Taxpayers Act

Plaintiff seeks to add claims for violation of the New Mexico Fraud Against Taxpayers Act, NMSA 1978, §§ 44-9-1 to -14. Plaintiff appears to allege violations of FATA's "false claims" provision, § 44-9-3, and its "retaliation" provision, § 44-9-11.

Section 44-9-3 provides that "[a] person shall not," among other things:

> (1) knowingly present, or cause to be presented, to an employee, officer or agent of the state or a political subdivision or to a contractor, grantee or other recipient of state or political subdivision funds a false or fraudulent claim for payment or approval;

> (2) knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim; [or]

> (3) conspire to defraud the state or a political subdivision by obtaining approval or payment on a false or fraudulent claim[.]

Plaintiff alleges that Defendants violated this provision by hiring and continuing to employ one of her colleagues, Mr. Bonal, despite knowing that he made false statements regarding his qualifications when he applied for a position at GSD. [Doc. 77] at 15, 47. She claims that Defendants "repeatedly defraud the taxpayers and the State . . . by continuing to pay Mr. Bonal with state funds" and by "continu[ing] to put sensitive information at risk by employing him without the proper credentials." *Id.* at 47. She alleges that Mr. Bonal's resume "was full of fictional information completely misrepresenting his experience and skills." *Id.* at 15. Plaintiff suggests Defendant Baltzley "should have easily recognized" the gross misrepresentations and thus rejected his job application. *Id.* Plaintiff further alleges that Defendants "defended a lawsuit against Mr. Bonal" during which they "stipulated in court to his credentials being legitimate," despite knowing they were not. *Id.* at 47.

Plaintiff's claim is deficient on multiple fronts. First, to the extent Plaintiff seeks to assert this cause of action against Defendant GSD or the individual Defendants in their official capacities, such claims are barred by sovereign immunity. The New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, immunizes the state and public employees from tort liability unless otherwise specified within the Act. And, while the Supreme Court of New Mexico has held that the New Mexico legislature may waive immunity through the passage of other state laws, *Luboyeski v. Hill*, 1994-NMSC-032, 117 N.M. 380, the legislature has not made the state susceptible to suit under § 44-9-3. The definition of a "person" in that provision—i.e., the individuals or entities whose conduct § 44-9-3 regulates—does not include the state or state

agencies.  *See* § 44-9-2(D); *see also Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d. 1136, 1243–44 (D.N.M. 2013) (recognizing the distinction between the false claims provision (§ 44-9-3), which does not entertain suit against the state, and the retaliation provision (§ 44-9-11), which does, and finding that the legislature waived immunity with respect to § 44-9-11).

Moreover, to the extent Plaintiff seeks to assert this cause of action against Defendants in their individual capacities, she does not plausibly allege any violation of § 44-9-3 against them. FATA, which closely tracks the federal False Claims Act ("FCA"), prohibits "the acts of knowingly presenting a false claim for payment from the State, presenting false records to obtain payment from the State, and making false statements to obtain payment."  *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2013-NMCA-043, ¶ 7, 297 P.3d 357.  A plaintiff alleging violation of FATA must satisfy the heightened pleading requirement for fraud under Fed. R. Civ. P. 9(b), which provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) ("Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud and mistake' that must be pled with particularity under Rule 9(b)."); *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2004 n.6 (2016) (plaintiffs alleging claims under the nearly identical federal False Claims Act must satisfy the heightened pleading standard of Rule 9(b)); *see also State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2015-NMSC-025, ¶ 16, 355 P.3d 1 ("We find the cases construing FATA's federal analogue, the False Claims Act, helpful in understanding the context and purpose of FATA.").

Plaintiff has failed to plausibly allege any violation of § 44-9-3, particularly under the heightened pleading standard of Rule 9(b). For one, she does not allege which individual Defendants she seeks to assert her FATA claim against. The only party she mentions by name in her factual pleadings on this claim is Defendant Baltzley, who she says should have perceived the alleged misrepresentations in Mr. Bonal's application. Moreover, Plaintiff does not allege *what* the false claims were. Nor does she allege how or why Defendant Baltzley should have known of his alleged fraud. Mr. Bonal, the employee who Plaintiff alleges lied on his job application, is not a defendant in this action. Plaintiff's attempts to connect Defendant Baltzley or any other Defendants to his alleged misrepresentations and fraud amount to mere speculation. She does not allege the "specific acts that would render [Defendants] individually liable" under § 44-9-3. *Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348, 353 (D.D.C. 1990). Even assuming that the scenario Plaintiff posits could come within the ambit of FATA (i.e., that a FATA violation may give rise to a claim against a supervisor for hiring an employee who misrepresented his qualifications), which I do not find, her claims are speculative. Her allegations do not cross the line from possible to plausible, *see Iqbal*, 556 U.S. at 678, much less satisfy the heightened pleading requirement for claims involving fraud.[9]

---

[9] Defendants also point out that Plaintiff failed to comply with the procedural requirements of § 44-9-5(A), which dictate that a FATA claim pursuant to § 44-9-3 be brought as a qui tam action in the name of the state or political subdivision, and that it be filed in camera in district court and remain under seal for at least 60 days. *See* [Doc. 82] at 15 n.8; *see also Peterson v. Neubauer*, 2010 WL 4621717, at *2 (N.M. Ct. App. July 28, 2010) (unpublished) (plaintiff failed to state a claim under FATA "because he has failed to bring any action in the name of the state"). Plaintiff apparently sought to remedy this procedural defect by filing a motion to sever or bifurcate her FATA claim. [Doc. 55]. Ultimately, I need not consider these procedural defects any further because I find that amendment should be denied with respect to Plaintiff's § 44-9-3 claim on other grounds, as discussed *supra*.

Plaintiff also alleges violation of the retaliation provision of FATA, § 44-9-11(B), which

provides:

> [a]n employer shall not discharge, demote, suspend, threaten, harass, deny promotion to or in any other manner discriminate against an employee in the terms and conditions of employment because of the lawful acts of the employee on behalf of the employee or others in disclosing information to a government or law enforcement agency or in furthering a fraud against taxpayers action, including investigating, initiating, testifying or assisting in an action filed or to be filed pursuant to [FATA].

Plaintiff alleges that she was retaliated against for engaging in activity protected by

§ 44-9-11(B). [Doc. 77] at 44. As discussed *supra*, the "false claims" that Plaintiff purports to

have uncovered concern alleged misrepresentations made by Mr. Bonal to secure his

employment. Plaintiff alleges that once she discovered the misrepresentations in Mr. Bonal's

resume, she "reported this to the AG and the State Auditor." *Id.* at 15. By Plaintiff's own

admission, this disclosure in furtherance of a FATA action occurred *after* she had been

"constructively discharged." *Id.* She did not discover the basis for her belief that Defendants

were engaged in activities prohibited by FATA, and did not report it, until after she had resigned

from GSD. "By its very nature, retaliatory conduct must come *after* the protected activity."

*Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014).[10]

---

[10] In her reply, Plaintiff suggests that her own timeline of events is not fatal to her FATA retaliation claim because "a major portion of [her] whistleblower complaint dealt with misfeasance and malfeasance, both of which defrauded taxpayers." [Doc. 85] at 3. As discussed *supra*, Plaintiff alleged FATA claims based on Defendants' employment of Mr. Bonal despite knowing he had misrepresented his qualifications. Her proposed amended complaint does not attempt to tie in other alleged misconduct to her FATA claims. Her cursory conclusion in her reply that other government "misfeasance" defrauded taxpayers is unavailing. *See McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 794 (10th Cir. 2012) (To claim retaliatory discharge, "[w]histleblowers must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations.").

Plaintiff's own timeline is fatal to her FATA retaliation claim. The motion to amend to add claims for violation of FATA should be denied as futile.

### 4. New Mexico Inspection of Public Records Act

Plaintiff seeks leave to amend to assert a new claim against Defendant GSD for violation of the New Mexico Inspection of Public Records Act, NSMA 1978, §§ 14-2-1 to -12. She alleges she requested emails between Defendant Baltzley and Mr. Bonal, documentation concerning the hiring of Mr. Bonal, overtime totals from her department, and various other records concerning the State's spending on whistleblower and civil rights actions against it. [Doc. 77] at 32–33. She alleges she received the requested overtime totals but not the other requested documents. *Id.* at 33. Defendants do not object to amendment to add an IPRA claim, except to the extent Plaintiff asserts the claim against the individual Defendants. [Doc. 82] at 3 n.2, 7. Plaintiff has indicated that the claim is asserted against "Defendant GSD/Official Capacity." It thus appears to me that Plaintiff seeks to assert this claim against Defendant GSD alone.[11] I recommend that Plaintiff's motion be granted to the extent she seeks to add an IPRA claim against Defendant GSD.[12]

---

[11] Plaintiff refers to "Defendant GSD" and "Official Capacity." [Doc. 77] at 32. To the extent she intends to sue Defendants in their official capacities, it is not different than a suit against GSD itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)).

[12] Because Defendants do challenge amendment to add an IPRA claim on substantive grounds, I will not engage in my own substantive analysis and I do not pass here on the merits of Plaintiff's claim.

### 5. *Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing*

Plaintiff seeks to add claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing. She alleges that, together, the "State Personnel Board Rules, State of New Mexico Policies, Communication Workers of America Bargaining agreements, and General Service Department Policies" created an implied contract of employment. [Doc. 77] at 49. She alleges Defendants violated several provisions of the implied contract concerning, among other things, her ability to carry out her job duties unimpeded; the handling of disciplinary actions; protection from harassment and discrimination; and protection from retaliation for whistleblower activity. *Id.* In response, Defendants contend that amendment would be futile because Plaintiff's claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. [Doc. 82] at 18–20.

Section 301 of the LMRA controls disputes over collective bargaining agreements. The Supreme Court has held that § 301 not only confers federal jurisdiction over collective bargaining disputes, but also reflects Congress's desire to have a uniform federal interpretation of collective bargaining agreements. As such, all suits that fall under § 301 must be governed by federal law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (internal citation omitted). The test for determining whether a state law claim is preempted by § 301 is "whether evaluation of the

[claim] is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

I find that Plaintiff's claims for breach of implied contract and the implied covenant of good faith and fair dealing are preempted by § 301. Plaintiff acknowledges that her collective bargaining agreement ("CBA") is among the written materials that she alleges created an implied contract. [Doc. 77] at 49. And she provides excerpts of the CBA concerning disciplinary actions and whistleblower protection for employees who report misconduct. *Id.* at 50. These portions of the CBA specifically govern the subject matter that forms the basis for her implied contract claims. The question of whether Defendants breached an alleged implied contract would necessarily require an analysis of the requisite CBA provisions. It would necessarily require the Court to interpret the CBA.

The Tenth Circuit reached the same conclusion in *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001), holding that plaintiff's breach of implied contract claim that relied on the employer's personnel policy, code of ethics, and director's memo was preempted by § 301 because the documents were intended to be read in harmony with the CBA. 236 F.3d at 1210–11; *see also Cumpston v. Dyncorp Tech. Servs., Inc.*, 76 F. App'x 861, 863–64 (10th Cir. 2003) (plaintiff's breach of implied contract claim was preempted, irrespective of whether there was any "general intrinsic connection" between the CBA and the employer's business-ethics standards, because the standard prohibiting "harassment" did not define that term, such that court would have to look to CBA to determine whether the standards were in fact violated); *Galway v. Smith's Food & Drug Ctr., Inc.*, 1995 WL 734423 (10th Cir. Dec. 11, 1995) (unpublished)

(breach of implied contract claim based on employee's discharge was preempted where CBA set out grievance and arbitration procedures through which employee could challenge discharge).

Likewise, a number of decisions within this District have reached the same conclusion, finding claims for breach of implied contract based on the employer's policy manuals and other like materials to be preempted by § 301. *See, e.g.*, *Caroll v. City of Albuquerque*, 749 F. Supp. 2d 1216, 1230–34 (D.N.M. 2010) (personnel regulations and employer procedures manual were interdependent on the CBA, such that claim for breach of implied contract was preempted); *Montano v. Pub. Serv. Co. of N.M.*, 2014 WL 11430952, at *2–3 (D.N.M. July 16, 2014) (unpublished); *Long v. Lockheed Martin Servs., Inc.*, 2009 WL 10664897, at *3–4 (D.N.M. Mar. 5, 2009) (unpublished).

Plaintiff's arguments to the contrary are not persuasive. She suggests that her breach of implied contract claim is not preempted because the implied contract was "created completely outside the CBA" and "[r]emoving the CBA from this claim would make no material difference." [Doc. 85] at 11, 12. First, this is inconsistent with Plaintiff's own pleading, which alleges that the implied contract arose from the CBA, among other written policies and procedures. *See* [Doc. 77] at 49–50. Second, the existence of other written materials concerning the subject of Plaintiff's contract claim "does not rebut the fact that the CBA exists and that the other materials . . . are inextricably intertwined with, and substantially dependent on, consideration of the terms of the CBA." *Montano*, 2014 WL 11430952, at *3.

Because I find Plaintiff's claims for breach of implied contract and the implied covenant of good faith and fair dealing are preempted by § 301, I recommend that leave to amend be denied as futile.[13]

### 6. Family and Medical Leave Act

Plaintiff seeks to add a claim for violation of her rights under the Family and Medical Leave Act. She alleges Defendants interfered with her right to take FMLA leave and failed to reinstate her at her previous position upon her return. [Doc. 77] at 51–53. The FMLA permits a qualified employee to take up to twelve weeks of leave during any twelve-month period for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to interfere with or retaliate against an employee's exercise or attempted exercise of these rights. In *Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012), the Supreme Court held that the Eleventh Amendment bars suits from litigants who seek damages from a state or state entity for violation of the FMLA's self-care provision. 566 U.S. at 34; *see also Long v. E.N.M. Univ. Bd. of Regents*, 2015 WL 13667230, at *3 (D.N.M. Jan. 26, 2015) (unpublished).

Defendants argue that, to the extent Plaintiff seeks to assert claims against GSD and Defendants in their official capacities, her claims are barred by the Eleventh Amendment. [Doc. 82] at 21 (citing *Coleman*, 566 U.S. at 34). In reply, Plaintiff contends that *Coleman* applies only to claims for monetary damages against the state and indicates she is not seeking

---

[13] Where a party's claims are preempted by § 301, the court must either dismiss the claims or treat them as arising under § 301. *Allis-Chalmers*, 471 U.S. at 220. Plaintiff previously sought to add a § 301 claim in this case. The Court denied it on futility grounds, and the Tenth Circuit affirmed the denial. *See* [Doc. 49-1] at 12–13. Therefore, only denial of leave to amend with prejudice is appropriate here.

monetary damages as to the official capacity claims. [Doc. 85]. Courts in this district have found that *Coleman* does not preclude a party from seeking non-monetary relief. Consistent with *Ex Parte Young*, plaintiffs may bring FMLA claims against state officials in their official capacities for prospective injunctive relief. *See Long*, 2015 WL 13667230, at *5–6; *see also Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young*."). Although Plaintiff is correct that she may assert official-capacity claims for non-monetary relief, her proposed amended complaint does not specify what, if any, prospective equitable relief she seeks in connection with her FMLA claims. In fact, her reply suggests that she intends to assert the official-capacity claims "to create a record of" Defendants' alleged FMLA violations and in the interest of "public policy." [Doc. 85] at 13. The *Ex Parte Young* doctrine "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). I thus recommend that amendment be denied as to Plaintiff's official-capacity claims.

To the extent Plaintiff asserts claims against Defendants in their individual capacities, Defendants argue (albeit it in a single sentence in a footnote) the complaint fails to make specific allegations as to the conduct of each individual Defendant against whom Plaintiff seeks to assert her FMLA claim. [Doc. 82] at 21 n.10. To determine whether an individual may be liable for a FMLA violation, courts consider whether the defendant "exercise[d] supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1040 (D.N.M. 2017) (internal quotation marks omitted). Put another way, courts look to "whether the

defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position." *Id.* (internal quotation marks omitted). Thus, while the plaintiff need not "specifically allege all facts relevant to the individual defendants' authority," she still must "plead that the proposed individual [d]efendants had substantial control over the aspects of employment alleged to have been violated." *Id.*

Plaintiff's proposed amended complaint identifies Defendant Dawson alone as an individual who, as she alleges, interfered with her ability to take FMLA leave. *See* [Doc. 77] at 30–31. She otherwise makes only vague references to "Defendants." *See generally id.* at 51–53. Thus, I recommend that Plaintiff's motion be granted as to Defendant Dawson and denied as to all other individual Defendants.

### 7. *Stored Communications Act*

Plaintiff alleges violation of the Stored Communications Act, 18 U.S.C. § 2701, based on the same facts underlying her claim against Defendants White-Davis and McLean for violation of her Fourth Amendment right to privacy. That is, she alleges Defendants White-Davis and McLean accessed her "stored communications" when they obtained access to her webpage on CaringBridge. [Doc. 77] at 53–54. She alleges that Defendants not only viewed her non-public CaringBridge page, but did so by creating a "fake account" with "fake information," in violation of CaringBridge's terms of use. *Id.* at 54. In response, Defendants contend as an initial matter that Plaintiff sought leave to amend to add an SCA claim after the two-year statute of limitations had run, and the claim does not "relate back" to the date of filing of any earlier complaint or motion to amend. [Doc. 82] at 22–25. Thus, the claim is time-barred. Defendants additionally argue that Plaintiff has otherwise failed to state a claim under the SCA. *Id.* at 25–28.

The SCA was enacted to prevent hackers from obtaining certain stored electronic communications, *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001), as well as to prevent providers of communication services, e.g., Facebook, from "divulging private communications to certain entities and individuals," including the government, *Marquez*, 2015 WL 13638613, at *1. The statute provides that, subject to certain objections, whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility," thereby obtaining an electronically stored communication, is subject to liability. 18 U.S.C. § 2701(a). It does not apply to electronic communications that are "readily accessible to the general public." As one court has phrased it, the SCA covers: "(1) electronic communications, (2) that were transmitted via an electronic communication service, (3) that are in electronic storage, and (4) that are not public." *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 667 (D.N.J. 2013).

Courts have found that the SCA may apply to information shared on social networking websites. In the context of SCA claims, as with related Fourth Amendment claims, privacy is the touchstone. The SCA protects private information that the communicator "actively restricts the public from accessing." *Id.* It does not protect information made accessible to the public. *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010) (whether SCA violation occurred depended on privacy setting of user's social media pages); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) (user's "express warning, on an otherwise publicly accessible webpage" was insufficient to give rise to SCA protection).

Here, Plaintiff has failed to state a claim for violation of the SCA. Even assuming all other elements of the claim are adequately pleaded, the electronic communications that Defendants obtained were not private. Defendants learned that Plaintiff had a webpage on CaringBridge and they viewed the contents of the page as could anyone else with a CaringBridge registration. For the same reasons Plaintiff's claim for violation of her Fourth Amendment right to privacy fails, so, too, does her SCA claim fail. The SCA does not protect communications that are publicly available. Plaintiff's motion to amend to add a claim for violation of the SCA should be denied as futile.

### 8. *First Amendment Violation of Freedom of Speech and Association Pursuant to § 1983*

Plaintiff seeks to add § 1983 claims against Defendants White-Davis and McLean in their individual capacities for violation of her First Amendment rights of freedom of speech and association. She alleges Defendants "placed [Plaintiff] under investigation in both her work and her private life specifically because she had engaged in the protected activity of filing an EEOC charge." [Doc. 77] at 35. Plaintiff contends that Defendants White-Davis and McLean "investigated" Plaintiff by accessing her webpage on CaringBridge. *Id.* at 55. She says that Defendant White-Davis specifically stated this was done out of Defendants' concern about Plaintiff's communications with coworkers outside of the workplace, specifically on the matters of her work status and alleged mistreatment, subjects that Plaintiff alleges constitute protected communications. *Id.* Plaintiff alleges she has the right to communicate with whomever she chooses outside the workplace and to be free from "surveillance" and "scrutiny" by Defendants

in her free time. *Id.* at 56. Plaintiff further alleges that Defendants forbade her from moving freely about her workplace or interacting with her co-workers. *Id.* at 36.

Plaintiff has failed to state a claim on which relief can be granted. A party asserting constitutional claims pursuant to § 1983 must allege the personal participation of each defendant. There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Dodds v. Richardson*, 614 F.3d 1185, 1200–01 (10th Cir. 2010). With respect to Defendants White-Davis and McLean, the only personal involvement Plaintiff alleges is that they viewed the publicly available contents of Plaintiff's CaringBridge webpage. Standing alone, this allegation does not state a claim for violation of Plaintiff's First Amendment rights to freedom of speech and association. To the extent Plaintiff could state a claim for violation of her First Amendment rights, she does not allege the personal involvement of Defendants White-Davis and McLean in any such constitutional violation. She fails to state a § 1983 claim for violation of her First Amendment rights.[14]

Moreover, to the extent Plaintiff alleges she was denied the freedom to associate with her co-workers, there is no general First Amendment right to do so. *A.M. ex rel Youngers v. N.M. Dep't of Health*, 117 F. Supp. 3d 1220, 1243 (D.N.M. 2015) ("Indeed, there is no independent First Amendment right of expressive association. . . ."); *Boyd v. City of Victoria, Kan.*, 2017 WL

---

[14] Defendants additionally argue that amendment as to Defendant McLean would be futile because she is not a state actor acting under color of law. [Doc. 82] at 28. Because I find that amendment would be futile for other reasons, I need not consider this argument. Likewise, the parties dispute whether speech involving workplace harassment and discrimination is a "matter of public concern" sufficient to support a First Amendment claim. *See* [Doc. 82] at 28–29; [Doc. 85] at 9. Having found that Plaintiff fails to allege the personal involvement of Defendants White-Davis and McLean, I need not resolve this dispute.

3581737, at *12–13 (D. Kan. Aug. 18, 2017) (unpublished) (police chief instructing resident to "stay away" from plaintiff did not violate plaintiff's First Amendment right of expressive association); *Amna v. N.Y. State Dep't of Health*, 2009 WL 6497844, at *4 (E.D.N.Y. Sept. 3, 2009) (unpublished) ("To the extent plaintiff alleges that defendants have violated her right to freely associate with her coworkers, there is no constitutionally protected right to 'social association.'"). Therefore, Plaintiff's motion to amend to include claims against Defendants White-Davis and McLean for violation of her rights of free speech and association should be denied as futile.

### 9. Conspiracy to Violate Civil Rights Pursuant to 42 U.S.C. § 1985

Plaintiff seeks to add claims against Defendants in their individual capacities for conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985. She alleges that Defendants knew of the harassment she endured and "conspired" not to investigate her claims or otherwise intervene, "in violation of her right to equal protection." [Doc. 77] at 56. She similarly alleges that Defendants conspired to terminate her "in violation of her right to equal protection." *Id.* at 57. Plaintiff further alleges that Defendants White-Davis and McLean conspired to violate her First and Fourth Amendment rights by surveilling her, as discussed at length *supra*. *Id.*

To state a claim for conspiracy under § 1985(3), i.e., conspiracy to deprive a person of rights or privileges, the plaintiff must allege that the defendants "(1) conspired, (2) to deprive [plaintiff] of equal protection or equal privileges and immunities under the law, (3) acted in furtherance of this objective, and (4) injured [plaintiff] or deprived [her] of any right or privilege as a result." *Wolfson v. Bruno*, 265 F. App'x 697, 698 (10th Cir. 2008) (citing *Griffin v.*

*Breckenridge*, 403 U.S. 88, 103 (1971)). "The intent behind the conspiracy must be based on some invidious discriminatory animus, such as racial or otherwise class-based animus." *Id.* Mere conclusory allegations of conspiracy will not suffice to state a claim. *Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014). Rather, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010).

Plaintiff fails to state a claim on which relief can be granted. She has not adequately pleaded the denial of any constitutional right. Nor has she alleged that any deprivation of a constitutionally protected right or privilege was propelled by her membership in a protected class, by "invidious discriminatory animus." *See Hall v. Witteman*, 569 F. Supp. 2d 1208, 1225 (D. Kan. 2008) (noting that the language of "class-based animus" has been narrowly construed and does not reach, among other things, conspiracies motivated by economic or commercial bias, disability, or political affiliation). Nor has Plaintiff directed the Court to any facts tending to show "an agreement and concerted action among the defendants." *Boyd*, 2017 WL 3581737, at *11. In short, Plaintiff's proposed amended complaint contains nothing more than conclusory allegations. She has failed to state a cognizable claim under § 1985. Plaintiff's motion to amend to add a conspiracy claim pursuant to § 1985 should be denied as futile.

### IV. <u>Conclusion</u>

I find that Plaintiff should be permitted to proceed on the following claims: (1) her FPWA/EPA claims against Defendant GSD; (2) her WPA claims against Defendant GSD and Defendant Burckle in his official capacity; (3) her IPRA claim against Defendant GSD; and (4) her FMLA claim against Defendant Dawson. I further find that amendment should be denied

as to the other claims and parties Plaintiff seeks to add, for the reasons stated herein.  I therefore recommend that Plaintiff's motion be granted in part and denied in part.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Third Motion for Leave to Amend [Doc. 77] be **GRANTED IN PART** and **DENIED IN PART**.  I recommend that the motion be **GRANTED** as to Plaintiff's IPRA claim against Defendant GSD and her FMLA claim against Defendant Dawson.  I recommend that the motion be **DENIED** in all other respects.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the proposed findings and recommended disposition.  *See* D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**