# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**HEATHER BURKE,**

      **Plaintiff,**

**v.**                                    **No. 16-cv-0470 MCA/SMV**

**STATE OF NEW MEXICO, EDWYNN BURCKLE,
JAY HONE, MICHAEL GALLEGOS,
ANGELA DAWSON, BRENDA GUETHS,
KAREN BALTZLEY, GENERAL SERVICES
DEPARTMENT OF THE STATE OF NEW MEXICO,
and LARA WHITE-DAVIS,**

      **Defendants.[1]**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition ("PF&RD") [Doc. 90], filed on May 9, 2018. On reference by the undersigned, the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended granting in part and denying in part Plaintiff's Third Motion for Leave to Amend [Doc. 77].[2] Plaintiff objected to the PF&RD on May 21, 2018. [Doc. 91]. Defendants did not object to the PF&RD but responded to Plaintiff's objections on June 4, 2018. [Doc. 92]. On de novo review of the portions of the PF&RD to which Plaintiff objects, the Court overrules the objections,

---

[1] The State of New Mexico is no longer a party in this action. *See* [Docs. 50, 53]. All other Defendants were named in Plaintiff's Amended Complaints [Docs. 53, 54] following remand from the Tenth Circuit.

[2] Plaintiff titled this motion a "second" motion for leave to amend. [Doc. 77] at 1. Because it was, in fact, her third motion for leave to amend following remand from the Tenth Circuit, Judge Vidmar referred to it as such in the PF&RD to avoid any confusion. The Court does the same.

adopt the PF&RD, and grant in part and deny in part Plaintiff's Third Motion for Leave to Amend [Doc. 77] as discussed herein.

## I. **Background**

In January 2013, Plaintiff began working for the New Mexico General Services Department ("GSD") as an "IT Generalist." [Doc. 49-1] at 2. In that position, she "provid[ed] IT support and customer services for GSD." *Id.* Plaintiff alleges a number of violations of state and federal law stemming from her employment in that position. She alleges that men in her department were being paid more than women in the same positions. She further alleges harassment at the hands of a co-worker that, when reported to her supervisors, went unchecked. She alleges that she uncovered "malfeasance" and "gross misconduct and . . . mismanagement" within her department but was retaliated against and subjected to a hostile work environment when she reported these issues. She contends she was similarly retaliated against for reporting serious security and privacy breaches at GSD. Plaintiff also alleges that she was retaliated against and subjected to a hostile working environment as a result of being diagnosed with cancer and during the course of her treatment. *See* [Doc. 49-1] at 2–4.

Plaintiff, proceeding pro se, filed suit in state court in May 2016 against the State of New Mexico and several state employees. [Doc. 1-2]. She alleged claims based on the Fair Pay for Women Act ("FPWA"), the New Mexico Whistleblower Protection Act ("WPA"), and 42 U.S.C. § 1983. Defendants removed the case to federal court and moved to dismiss the claims. [Docs. 1, 10]. Plaintiff subsequently moved to amend her complaint by substituting GSD in place of the State of New Mexico as a defendant and adding certain additional claims and defendants. [Doc. 29]. On October 3, 2016, the Honorable Robert A. Junell,

Senior United States District Judge, granted Defendants' motion to dismiss all of Plaintiff's claims and denied her leave to amend her complaint. [Docs. 41, 42].

Plaintiff appealed to the Tenth Circuit, which affirmed in part and reversed in part. 696 F. App'x 325 (10th Cir. 2017); [Doc. 49-1]. The Tenth Circuit affirmed the dismissal of Plaintiff's claims except as to her WPA claim against Defendant Burckle, Secretary of the General Services Department, in his official capacity.[3] [Doc. 49-1] at 20. And it affirmed the denial of leave to amend except as to the addition of FPWA and EPA claims against GSD, the addition of a WPA claim against GSD, and the submission of an amended § 1983 privacy claim. *Id.* at 20–21. The Tenth Circuit remanded "for further proceedings as to violation of privacy, wage discrimination, and whistleblowing that are consistent with this Order and Judgment." *Id.* at 21. On remand, Judge Junell vacated the judgment in part and granted Plaintiff leave to file an amended complaint. [Doc. 50]. Consistent with the Tenth Circuit's order, Judge Junell granted Plaintiff leave:

> (1) to amend her privacy claim under 42 U.S.C. § 1983 and cure the deficiencies noted in the Tenth Circuit's Order and Judgment dated June 8, 2017; (2) to name GSD as a defendant in this action; (3) to add a WPA claim against GSD in addition to Plaintiff's WPA claim against Edwynn Burckle, in his official capacity as Secretary of the General Services Department; and (4) to add discrimination claims under New Mexico's [FPWA] and the federal [EPA] against GSD. Plaintiff shall **not** include any other previously-dismissed claims in her Amended Complaint, except as specified by this Order.

[Doc. 50] at 1–2. He ordered Plaintiff to file her amended complaint within 21 days. *Id.* at 1.

---

[3] The Tenth Circuit also vacated the judgment "to the extent it purported to dismiss non-existent § 1983 claims against Secretary Burckle in his official capacity." [Doc. 49-1] at 20.

On September 5, 2017, Plaintiff filed a 46-page amended complaint. [Doc. 53]. The amended complaint stated FPWA and EPA claims against GSD; § 1983 claims for violation of the Fourth Amendment against Defendants Burckle and Baltzley in their individual capacities; and a WPA claim against GSD. Plaintiff also asserted several new claims that she had never previously raised. She alleged violation of the New Mexico Human Rights Act ("NMHRA") for gender discrimination and harassment, disability discrimination, and failure to accommodate; violation of the New Mexico Fraud Against Taxpayers Act ("FATA"); violation of the New Mexico Inspection of Public Records Act ("IPRA"); breach of contract and breach of the implied covenant of good faith and fair dealing; and violation of the Family and Medical Leave Act ("FMLA").[4] A week later, on September 13, 2017, Plaintiff filed a second amended complaint, without requesting leave of the Court to do so. [Doc. 54]. The second amended complaint added several new paragraphs and made additional changes to existing allegations.

Defendants moved to strike both amended complaints pursuant to Fed. R. Civ. P. 15(f). [Doc. 56]. They asserted that the Tenth Circuit's order "narrowly set the parameters under which" Plaintiff could file an amended complaint, and she had exceeded the scope of the order. *Id.* at 6. Plaintiff argued that, to the extent she was required to obtain leave of the Court to add the new claims, the Court should grant such relief "*nunc pro tunc*." [Doc. 57] at 5. Plaintiff simultaneously filed a separate motion seeking leave to amend her complaint *nunc pro tunc*. [Doc. 59]. While these two motions were pending, Plaintiff filed two *additional* motions for

---

[4] As to the FATA and IPRA claims, the amended complaint specified that the claims were asserted against GSD. As to the other claims, Plaintiff did not specify against whom they were asserted. In addition to Defendants GSD, Burckle, and Baltzley, Plaintiff named Jay Hone, Michael Gallegos, Angela Dawson, Brenda Gueths, and Lara White-Davis as Defendants.

leave to amend. Plaintiff's second motion for leave to amend sought to add additional claims on top of those already asserted in her amended complaints. She sought to add new claims for violation of the Stored Communications Act ("SCA"), violation of her "freedom of speech and association" pursuant to § 1983, and conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985. [Doc. 76]. She also sought to add counsel for Defendants, Jaclyn McLean, as a Defendant in the case. Plaintiff's subsequent third motion for leave to amend—the motion now before the Court—sought to correct technical errors in the caption and title of her most recent proposed amended complaint. [Doc. 77]. In response, Defendants moved the Court to stay any further filings by Plaintiff pending resolution of its motion to strike. [Doc. 78].

Judge Vidmar entered a Memorandum Opinion and Order on December 22, 2017 [Doc. 80], denying as moot Defendants' motion to strike and Plaintiff's first and second motions seeking leave to amend. He ordered Defendants to respond to Plaintiff's most recent motion for leave to amend, addressing whether amendment should be granted pursuant to Fed. R. Civ. P. 15(a)(2). *Id.* at 9. Defendants responded to Plaintiff's third motion to amend on January 12, 2018. [Doc. 82]. They argued that Plaintiff's motion should be denied in its entirety for failure to comply with the pleading standards of Fed. R. Civ. P. 8, given the length and confusing nature of the proposed amended complaint. They further argued that the motion should be denied in its entirety pursuant to Fed. R. Civ. P. 15(a)(2), for having made her complaint a "moving target." *Id.* at 3–5. Finally, Defendants argued that amendment would be futile.

## II. <u>Motions for Leave to Amend</u>

Amendments to pleadings are generally governed by Fed. R. Civ. P. 15. Except where amendment is pleaded as a matter of course, a party may amend its pleading only with the

consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a). "[T]he court should freely give leave [to amend a complaint] where justice so requires." *Id.* However, a court may deny leave to amend on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). Amendment is futile if the pleading "as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). "The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). The Tenth Circuit has directed district courts to grant leave to amend "when doing so would yield a meritorious claim." *Curley*, 246 F.3d at 1284. The decision whether to grant leave to amend is left to the discretion of the district court. *See, e.g.*, *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *Foman*, 371 U.S. at 182.

Because Plaintiff proceeds pro se, the Court construes her filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). However, courts must apply the same procedural rules and legal standards applicable to filings drafted by attorneys. *Hall*, 935 F.2d at 1110. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* The Court does not act as advocate for pro se litigants. *Id.*; *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

### III. <u>Judge Vidmar Found that Plaintiff's Motion Should be<br>Granted in Part and Denied in Part</u>

Judge Vidmar found that Plaintiff's motion should be granted in part and denied in part. [Doc. 90]. He declined to deny the motion on the basis of Plaintiff's failure to comply with the pleading standards of Rule 8. Though he found that Plaintiff's proposed amended complaint was prolix and contained a great deal of superfluous information, he found that her claims nevertheless were discernible therein. *Id.* at 9. The complaint was "not so incomprehensible" as to warrant denial of her motion to amend wholesale. *Id.* Likewise, Judge Vidmar declined to deny the motion in its entirety for Plaintiff having made her complaint a "moving target." *Id.* at 9–10.

Judge Vidmar then considered whether amendment as to each claim should be denied on the basis of futility. He recommended that amendment be permitted as to Plaintiff's claim against Defendant GSD for violation of the New Mexico Inspection of Public Records Act, *id.* at 21, and as to her claim against Defendant Dawson for violation of the Family and Medical Leave Act, *id.* at 25–27. He found that the balance of Plaintiff's motion to amend should be denied. [5] *See generally id.* at 10–32. The Court summarizes in greater detail below Judge Vidmar's findings and recommendations with respect to the claims over which Plaintiff has raised the instant objections.

---

[5] He recommended that amendment be denied as to Plaintiff's claims for (1) violation of her Fourth Amendment right to privacy pursuant to § 1983; (2) violation of the New Mexico Human Rights Act; (3) violation of the New Mexico Fraud Against Taxpayers Act; (4) breach of contract and breach of the implied covenant of good faith and fair dealing; (5) violation of the Family and Medical Leave Act (except as to Defendant Dawson); (6) violation of the Stored Communications Act; (7) violation of her First Amendment rights to free speech and association pursuant to § 1983; and (8) conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985. *See generally* [Doc. 90] at 10–32.

## A. Fourth Amendment Right to Privacy
## Pursuant to § 1983

In her original complaint, Plaintiff asserted claims under § 1983 for violation of her Fourth Amendment right to privacy for the alleged disclosure of her private medical information and other details related to her employment. Judge Junell dismissed the claims and denied leave to amend, finding that amendment would be futile. The Tenth Circuit upheld the dismissal and denial of leave to amend, agreeing that the claims as pleaded were too speculative to proceed. [Doc. 49-1] at 9–10. However, the Tenth Circuit held that Plaintiff should be permitted another opportunity at amendment to cure the deficiencies it noted. *Id.* at 11.

In her proposed third amended complaint, Plaintiff re-asserted claims against Defendants Burckle and Baltzley based on the same factual premises alleged in her original complaint. [Doc. 90] at 10 (citing [Doc. 77] at 37–40). Plaintiff maintained that Defendants Burckle and Baltzley violated her Fourth Amendment right to privacy by disclosing confidential medical and employment-related information. *Id.* at 11. Judge Vidmar looked to the Tenth Circuit's characterization of the deficiencies in Plaintiff's original and first proposed amended complaints. *Id.* The Tenth Circuit held that Plaintiff had failed to plead "when the revelations of health information occurred or who was responsible." *Id.* (quoting [Doc. 49-1] at 9). The timing of these revelations was "critical" because Plaintiff had voluntarily disclosed such information to a newspaper reporter. *Id.* (quoting [Doc. 49-1] at 9). If she revealed the information to the reporter "*before* a defendant disclosed it to a third party," she had no viable Fourth Amendment claim. *Id.* (quoting [Doc. 49-1] at 10). Moreover, Plaintiff did not allege the date she found her personal information on a paper in GSD's parking lot, nor who was personally responsible. *Id.*

Section 1983 required "personal involvement in the alleged constitutional violation." *Id.* (quoting [Doc. 49-1] at 10). A "supervisory relationship alone" was insufficient to establish liability under § 1983. *Id.* (quoting [Doc. 49-1] at 11).

Judge Vidmar found that Plaintiff had failed to cure the deficiencies noted by the Tenth Circuit. *Id.* (citing [Doc. 77] at 29–30, 38–39). Her proposed amended complaint did not adequately allege that her private information was shared before it was voluntarily disclosed. Plaintiff still did not say when she shared her confidential information with the reporter. And, although Plaintiff stated that she found the paper in the parking lot on November 23, 2015, that date fell after the publication of the newspaper articles, which occurred in September 2015. *Id.* (citing [Doc. 77] at 13, 32). Finally, Plaintiff volunteered that she maintained a website, accessible to the public, for the specific purpose of sharing health-related information.[6] *Id.* at 11–12. Judge Vidmar found that the Fourth Amendment's privacy protections did not extend to information "knowingly expose[d] to the public." *Id.* at 12 (quoting [Doc. 49-1] at 10–11).

Moreover, even if she had sufficiently alleged the timing of the disclosures, Judge Vidmar found Plaintiff had not adequately alleged the personal involvement of Defendants. *Id.* at 12. She did not state who was responsible for leaving the paper in the parking lot. And, as to Defendant Burckle, Plaintiff stated only that he failed to properly address Plaintiff's complaints, despite having approved a code of conduct addressing the importance of securing confidential information. *Id.* (citing [Doc. 77] at 39). These allegations did not show

---

[6] Plaintiff contended that her CaringBridge page was not publicly viewable and that Defendants violated the Fourth Amendment and Stored Communications Act in accessing it. Judge Vidmar addressed, and rejected, her arguments on that point. *See* [Doc. 90] at 12–15, 27–29. The Court likewise addresses these arguments *infra*.

his personal involvement in violating Plaintiff's Fourth Amendment rights. A supervisor is liable under § 1983 only for his "own culpable involvement in the violation of a person's constitutional rights." *Id.* (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). Plaintiff failed to show any affirmative link between the alleged constitutional violation and Defendant Burckle's own participation, control, or failure to supervise. *Id.* Judge Vidmar therefore found that amendment would be futile as to Plaintiff's § 1983 Fourth Amendment claims and recommended that her motion be denied as to those claims.[7]

## B. Stored Communications Act

Plaintiff alleged violation of the Stored Communications Act, 18 U.S.C. § 2701, against Defendants White-Davis and McLean. She alleged that they accessed her "stored communications" when they obtained access to a webpage where Plaintiff posted medical and other personal information intended for a selected audience. [Doc. 77] at 53–54. Plaintiff maintained a webpage through CaringBridge, a site that allows people to create personalized webpages to share updates on their illnesses or medical conditions.[8] Based on Plaintiff's chosen privacy settings, her webpage would not appear in the results of a search conducted through a search engine and could only be viewed by a person with a CaringBridge account. *See id.* at 33–34. Plaintiff asserted that Defendants learned of her webpage by searching her work email and accessed the page by using a "fake account," in violation of CaringBridge's terms of use. *Id.* at 54. Defendants argued in response that the claim was time-barred because Plaintiff sought

---

[7] Plaintiff also sought to add § 1983 claims against Defendants White-Davis and McLean for violation of her Fourth Amendment privacy rights. Judge Vidmar found that she had failed to state a claim and recommended that amendment be denied as futile. *See* [Doc. 90] at 12–15. Plaintiff does not appear to challenge Judge Vidmar's findings and recommendation as to that claim in her objections.

[8] *See How CaringBridge Works*, CARINGBRIDGE, https://www.caringbridge.org/how-it-works/.

leave to amend to add an SCA claim after the two-year statute of limitations had run, and the claim did not "relate back" to the date of filing of any earlier complaint or motion to amend. [Doc. 82] at 22–25. Defendants additionally argued that Plaintiff otherwise failed to state a claim under the SCA because "there are no SCA protections for publicly-accessible social media websites." *Id.* at 25–28.

The SCA was enacted, Judge Vidmar found, to prevent hackers from obtaining certain stored electronic communications, *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001), as well as to prevent providers of communication services, e.g., Facebook, from "divulging private communications to certain entities and individuals," including the government, *Marquez v. Board of County Commissioners*, 2015 WL 13638613, at *1 (D.N.M. Jan. 13, 2015) (unpublished). [Doc. 90] at 28. Pursuant to the SCA, whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility," thereby obtaining an electronically stored communication, is subject to liability. *Id.* (quoting 18 U.S.C. § 2701(a)). The statute does not apply to electronic communications that are "readily accessible to the general public." *Id.* As one court phrased it, the SCA covers: "(1) electronic communications, (2) that were transmitted via an electronic communication service, (3) that are in electronic storage, and (4) that are not public." *Id.* (quoting *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 667 (D.N.J. 2013)).

Judge Vidmar noted that some courts have applied the SCA to information shared on social networking websites. *Id.* In the context of SCA claims, as with related Fourth Amendment claims, privacy is the touchstone. The SCA protects private information that

the communicator "actively restricts the public from accessing." *Id.* It does not protect information made accessible to the public. *Id.* (citing *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010) (whether SCA violation occurred depended on privacy setting of user's social media pages); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) (user's "express warning, on an otherwise publicly accessible webpage" was insufficient to give rise to SCA protection)).

Judge Vidmar found that Plaintiff failed to state a claim for violation of the SCA because, even assuming all other elements of the claim had been adequately pleaded, the electronic communications that Defendants obtained were not private. *Id.* at 29. Defendants learned that Plaintiff had a webpage on CaringBridge and they viewed the contents of the page as could anyone else with a CaringBridge registration. The SCA did not protect communications that were publicly available. Judge Vidmar therefore recommended that Plaintiff's motion to amend to add a claim for violation of the SCA be denied as futile.

### C. First Amendment Violation of Freedom of Speech and Association Pursuant to § 1983

Plaintiff sought to add a § 1983 claim against Defendants White-Davis and McLean in their individual capacities for violation of her First Amendment rights of freedom of speech and association. She alleged Defendants "placed [Plaintiff] under investigation in both her work and her private life specifically because she had engaged in the protected activity of filing an EEOC charge." [Doc. 77] at 35. Plaintiff contended that Defendants White-Davis and McLean "investigated" Plaintiff by accessing her webpage on CaringBridge. *Id.* at 55. Defendant White-Davis, she alleged, specifically stated this was done out of Defendants'

concern about Plaintiff's communications with coworkers outside of the workplace, specifically on the matters of her work status and alleged mistreatment, subjects that Plaintiff alleged constituted protected communications. *Id.* Plaintiff alleged she had the right to communicate with whomever she chose outside the workplace and to be free from "surveillance" and "scrutiny" by Defendants in her free time. *Id.* at 56. Plaintiff further alleged that Defendants forbade her from moving freely about her workplace or interacting with her co-workers. *Id.* at 36.

Judge Vidmar found that Plaintiff failed to state a claim on which relief could be granted. [Doc. 90] at 29–31. A party asserting constitutional claims pursuant to § 1983 must have alleged the personal participation of each defendant. There must have been an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *Id.* at 30 (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Dodds v. Richardson*, 614 F.3d 1185, 1200–01 (10th Cir. 2010)). Judge Vidmar found that, with respect to Defendants White-Davis and McLean, the only personal involvement Plaintiff alleged was that they viewed the publicly available contents of Plaintiff's CaringBridge webpage. *Id.* Standing alone, this allegation did not state a claim for violation of Plaintiff's First Amendment rights to freedom of speech and association. *Id.* To the extent Plaintiff could state a claim for violation of her First Amendment rights, she did not allege the personal involvement of Defendants White-Davis and McLean in any such constitutional violation. *Id.* She therefore

failed to state a § 1983 claim for violation of her First Amendment rights.[9]  Judge Vidmar further

found that, to the extent Plaintiff alleged she had been denied the freedom to associate with her

co-workers, there was no such general First Amendment right to do so.  *Id.* at 30–31 (citing *A.M.*

*ex rel Youngers v. N.M. Dep't of Health*, 117 F. Supp. 3d 1220, 1243 (D.N.M. 2015); *Boyd v.*

*City of Victoria, Kan.*, 2017 WL 3581737, at *12–13 (D. Kan. Aug. 18, 2017) (unpublished);

*Amna v. N.Y. State Dep't of Health*, 2009 WL 6497844, at *4 (E.D.N.Y. Sept. 3, 2009)).

### D. New Mexico Human Rights Act

Plaintiff sought to amend her complaint to add claims for violation of the New Mexico

Human Rights Act.  She sought to add NMHRA claims for gender discrimination and

harassment, disability discrimination, and failure to accommodate.  [Doc. 77] at 42–45.  To bring

an NMHRA suit in district court, Judge Vidmar found, a plaintiff must first exhaust the

administrative grievance process with respect to all named defendants.  *Campos v. Las Cruces*

*Nursing Ctr.*, 828 F. Supp. 2d 1256, 1267 (D.N.M. 2011).  Exhaustion requires the claimant to:

"(i) file a complaint with the [New Mexico Human Rights Division ("NMHRD") or the Equal

Employment Opportunity Commission ("EEOC")] making sufficient allegations to support the

complaint; and (ii) receive an order of nondetermination from the NMHRD."  *Id.*  A right-to-sue

letter from the EEOC does not substitute for an order of non-determination from the NMHRD.

*Id.*  Additionally, a claimant must exhaust her administrative remedies with respect to *each*

---

[9] Defendants additionally argued that amendment as to Defendant McLean would be futile because she was not a state actor acting under color of law.  [Doc. 82] at 28.  Because Judge Vidmar found that amendment would be futile for other reasons, he did not consider this argument.  Likewise, the parties disputed whether speech involving workplace harassment and discrimination was a "matter of public concern" sufficient to support a First Amendment claim.  *See* [Doc. 82] at 28–29; [Doc. 85] at 9.  Having found that Plaintiff failed to allege the personal involvement of Defendants White-Davis and McLean, Judge Vidmar declined to resolve such dispute.

defendant. Defendants who are "not named in the administrative proceeding cannot be added to the appeal to the district court." *Id.* (citing *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 10, 127 N.M. 282); *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380 ("[I]ndividual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them.").

Plaintiff stated she received her "notice of non-determination" for her "EEOC charges," [Doc. 77] at 5, and obtained her "right to sue," *id.* at 42. However, as Defendants pointed out, Plaintiff failed to specify *which* Defendants she sought to assert NMHRA claims against. [Doc. 82] at 6. Plaintiff's proposed amended complaint stated only that the claims are "official and individual capacity." This mattered, Judge Vidmar found, because without knowing which Defendants Plaintiff was asserting NMHRA claims against, it was impossible to know whether Plaintiff exhausted her administrative remedies as to those Defendants. [Doc. 90] at 16. Therefore, he recommended that Plaintiff's motion to amend to add NMHRA claims be denied without prejudice.

## IV. <u>Standard of Review for Objections to Magistrate Judge's PF&RD</u>

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* Moreover, "theories raised for the first time in objections to the

magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

# V. <u>Analysis</u>

Plaintiff objects to Judge Vidmar's proposed findings and recommended disposition as to four of the claims she seeks to add:  (1) violation of her Fourth Amendment right to privacy pursuant to § 1983; (2) violation of the Stored Communications Act; (3) violation of her First Amendment right to free speech and association pursuant to § 1983; and (4) violation of the New Mexico Human Rights Act.  [Doc. 91].  Her objections will be overruled.

## A. Fourth Amendment Right to Privacy
## Pursuant to § 1983

Plaintiff contends that she has stated a claim for violation of privacy in her proposed third amended complaint.  [Doc. 91] at 3–4.  First, she argues, her complaint sufficiently alleges that the disclosures by Defendants of her private information occurred before she voluntarily disclosed the information herself.  Her complaint "detailed the dates, in chronological order," on which Defendants disclosed her private medical information.  *Id.* at 3.  These disclosures occurred well before the stories about her were published in the newspaper, she argues.  *Id.* Second, Plaintiff contends that Defendants violated her right to privacy by disclosing private information other than that shared with the newspaper reporter, e.g., her social security number and date of birth.  *Id.* at 4.  As further evidence of Defendants' unlawful disclosures of her private information, she points to her allegation that Defendant Baltzley's son posted private information about her disciplinary record online.  *Id.*  Thus, she alleges she has stated a claim for violation of her right to privacy irrespective of the publication of the newspaper story.

The problem for Plaintiff is that the facts she alleges in her proposed third amended complaint—the facts she directs the Court's attention to in her objections—do not differ materially from those alleged in her original complaint or her first amended complaint. Her complaint and first amended complaint, for example, allege disclosures of her private medical information by Defendants, beginning in May 2015. *See* [Doc. 1-7] at 2–3; [Doc. 29] at 27. Both pleadings allege that the newspaper stories were published several months later, in September 2015. [Doc. 1-7] at 7–8; [Doc. 29] at 28–29. The pleadings allege that Plaintiff discovered a paper in the parking lot with her private information, including her social security number and date of birth, on it. [Doc. 1-8] at 4; [Doc. 29] at 32. And they allege that Defendant Baltzley's son left a comment on the newspaper's website revealing private details of Plaintiff's employment, suggesting that Defendant Baltzley had disclosed those private details to a third party. [Doc. 1-7] at 7; [Doc. 29] at 29.

The Tenth Circuit held that these allegations were insufficient to state a claim for violation of her Fourth Amendment right to privacy. As alleged in the original complaint, Plaintiff's claim was "too speculative to proceed as pled." [Doc. 49-1] at 9. And the first proposed amended complaint "did not materially alter her claim." *Id.* at 11. Plaintiff's most recent proposed amended complaint does not move the marker. It does not allege any additional material facts to cure the deficiencies noted by the Tenth Circuit, and the Court will not depart

from the Tenth Circuit's analysis.[10] The Court therefore finds that amendment would be futile. Plaintiff's motion is denied as to her Fourth Amendment privacy claim.

## B. Stored Communications Act

Plaintiff objects to Judge Vidmar's finding that she failed to state a claim against Defendants White-Davis and McLean for violation of the Stored Communications Act. [Doc. 91] at 4–7. Judge Vidmar found that Plaintiff had failed to state a claim for violation of the SCA because she had not alleged that the webpage Defendants allegedly accessed was private. Plaintiff argues that Judge Vidmar misconstrued the degree to which her CaringBridge page was accessible to the public. The PF&RD assumes that Plaintiff's webpage could be accessed by anyone who has registered with CaringBridge. *Id.* at 5–6. It assumes that her webpage would not show up through a search of Plaintiff's name on a search engine, but that the page could be located, for example, by navigating through CaringBridge's main page. Plaintiff clarifies in her objections that her webpage was "unlisted with search engines *and* internally." *Id.* at 6 (emphasis added). Therefore, one would not simply "stumble onto it." *Id.* Instead, Plaintiff provides, a person could access her CaringBridge page only by knowing its specific

---

[10] It is true that Plaintiff's proposed third amended complaint contains some new facts not previously alleged in her original or first amended complaints. However, to the extent Plaintiff alleges new facts, the information does not materially alter her claim. For example, Plaintiff now specifically alleges that disclosure of her private medical information by Defendants began as early as April 2015, rather than May 2015. *See* [Doc. 77] at 31. But this date was relevant, according to the Tenth Circuit, only in relation to the date "when Ms. Burke spoke to the reporter." [Doc. 49-1] at 10. Because Plaintiff still does not specify that latter date, it is immaterial whether Defendants' alleged revelations of her health information occurred in April or May. Likewise, Plaintiff now alleges the specific date on which she found the paper in the parking lot. [Doc. 77] at 13. But Plaintiff still does not allege who was responsible for that disclosure, and claims under § 1983 require "personal involvement in the alleged constitutional violation." [Doc. 49-1] at 10 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)).

URL.[11]  *Id.*  In other words, Plaintiff argues, her website was effectively hidden from public view even though it was theoretically available to anyone with a CaringBridge account.

Plaintiff's proposed third amended complaint does not plausibly allege violation of the SCA, and Plaintiff's objections will be overruled.  As Judge Vidmar found in the PF&RD, an SCA violation cannot flow from accessing a stored communication that was not made private.  The relevant facts that Plaintiff pleads in support of her SCA claim are as follows:  Plaintiff created a webpage on CaringBridge, through which she published information relating to her ongoing health problems.  [Doc. 77] at 31.  CaringBridge offered three levels of privacy: "public," "registration required," and "invitation only."  *Id.*  Plaintiff selected the intermediate level of privacy, which restricted access to visitors registered with CaringBridge but did not require visitors to obtain permission from Plaintiff before viewing her site.  *Id.* at 32.  Plaintiff alleges that she "took additional steps to make her site as private as feasible."  *Id.*  By way of example, she alleges she "set her site to not be publicly searchable," so it would be "very difficult" for others to find it.  *Id.*  She alleges that Defendants learned of her CaringBridge site when they "performed a retaliatory search" of her work email.  *Id.*  She alleges that Defendant McLean, at the direction of Defendant White-Davis, then created a CaringBridge account and visited her webpage, without authorization from Plaintiff or CaringBridge, in violation of the SCA.  *Id.* at 33.

These facts do not state a claim for violation of the SCA.  At best, Plaintiff's proposed amended complaint alleges that only a person with a CaringBridge account could view her

---

[11] A "URL," or "Uniform Resource Locator," is the address of a webpage.

webpage and that the page was not "publicly searchable." But the complaint itself does not specify what "publicly searchable" means and does not allege what private information Defendants were required to rely on, and did in fact rely on, in order to access her website. Moreover, even assuming that Plaintiff's proposed amended complaint adequately alleges that her webpage was accessible only by those who were in possession of its URL, and that Defendants accessed her webpage after learning of its existence through her work email,[12] the analysis does not change. It may be true that Plaintiff intended only those people whom she told about her webpage to view it, but Plaintiff registered her webpage in such a way that it could be viewed by any person with a CaringBridge account. Defendants did not access a page they were unauthorized to access. Defendants' access was consistent with the privacy settings that Plaintiff herself carefully chose.[13, 14] Plaintiff's motion will be denied as to her SCA claim.

### C. First Amendment Violation of Freedom of Speech and Association Pursuant to § 1983

Plaintiff objects to Judge Vidmar's finding that she failed to state a claim against Defendants White-Davis and McLean for violation of her First Amendment right to free speech. [Doc. 91] at 7. Plaintiff argues as an initial matter that Judge Vidmar's finding on her

---

[12] Defendants dispute this allegation. They maintain that they learned of Plaintiff's CaringBridge webpage when Plaintiff's co-workers reported its existence to Defendant White-Davis. *See* [Doc. 82] at 27 n.12.

[13] Defendants suggest that Plaintiff's argument in her objections—that the question of whether her webpage was publicly accessible is a question of fact for the jury—was not raised before Judge Vidmar, such that she has waived it. [Doc. 92] at 9. This is not so. It may be true that Plaintiff asserts for the first time in her objections that the parties' dispute over her SCA claim is a factual dispute "for the jury." However, her briefing on her motion to amend does address the question of whether her webpage was publicly accessible. *See, e.g.*, [Doc. 85] at 7–8. She cannot be said to have waived the issue.

[14] Defendants further assert that Judge Vidmar found, as an alternative basis to deny Plaintiff's SCA claim, that the claim was time-barred. [Doc. 92] at 9. Judge Vidmar made no such finding. The PF&RD acknowledged that Defendants had challenged the addition of this claim on the basis of timeliness. *See* [Doc. 90] at 27. But Judge Vidmar did not make any further findings as to whether the claim was time-barred, finding instead that Plaintiff had failed to state a claim for violation of the SCA. *Id.* at 28–29.

First Amendment claim was based on his erroneous conclusion that Plaintiff's CaringBridge page was publicly accessible. *Id.* She further argues that, irrespective of whether her webpage was publicly accessible, Defendants "placed her personal life under investigation" because she engaged in protected speech activity. *Id.* This "investigation," she argues, constitutes unlawful retaliation by Defendants in violation of her First Amendment rights.

Plaintiff's objections will be overruled. Plaintiff alleges that Defendants White-Davis and McLean "placed her private life under investigation" by viewing her CaringBridge page. To the extent Plaintiff alleges she was retaliated against after Defendants learned that Plaintiff had shared certain information on her webpage, Plaintiff does not allege the personal involvement of Defendants White-Davis and McLean. *See Montoya*, 662 F.3d at 1163 (personal involvement in the alleged constitutional violation is required to state a § 1983 claim). And to the extent Plaintiff alleges that the act of viewing her webpage itself constituted the retaliatory adverse action, she does not state a cognizable claim against Defendants White-Davis and McLean for retaliation in violation of the First Amendment. *See, e.g.*, *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005) ("An employee alleging retaliation must show that his employer took some adverse employment action against him."); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1207–08 (10th Cir. 2007) (adverse employment action includes, in addition to actual or constructive discharge, "substantial harassment and abuse" and "removing job duties from an employee's portfolio or giving an employee a written reprimand or a poor performance rating" (internal quotation marks omitted)); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1340–41 (10th Cir. 2000) ("[M]inor adverse employment actions [do] not constitute First Amendment violations."); *Carpenter v. Sch. Dist. No. 1*, 2017 WL 1407041,

at *6 (D. Colo. Apr. 20, 2017) (unpublished) (employer's directive to plaintiff that she refrain from posting certain work-related critiques on her Facebook page, without specific consequences attached thereto, was not an "adverse employment action"). Plaintiff's allegation that Defendants White-Davis and McLean looked at her webpage does not state a First Amendment retaliation claim. Plaintiff fails to state a claim for retaliation in violation of her First Amendment rights, and her motion to amend will be denied as to her First Amendment claim.

### D. New Mexico Human Rights Act

Plaintiff objects to Judge Vidmar's recommendation that her motion be denied without prejudice as to her claims for violation of the New Mexico Human Rights Act. [Doc. 91] at 7–9. Judge Vidmar recommended that amendment be denied because Plaintiff failed to specify which Defendants she was asserting NMHRA claims against. [Doc. 90] at 16. That mattered for purposes of determining whether Plaintiff had exhausted her administrative remedies as to each Defendant. *Id.* Plaintiff argues in her objections that the Court should assume she intended to state NMHRA claims against each Defendant. [Doc. 91] at 7–8. She further contends that, as a practical matter, Defendants had sufficient notice of her NMHRA claims against them because they were notified when Plaintiff filed her EEOC charges. *Id.* at 8. Finally, Plaintiff notes that the pleading standard is lenient, particularly for pro se parties, and that she has adequately alleged exhaustion under that permissive standard. *Id.*

Plaintiff's objection will be overruled. As Judge Vidmar noted in the PF&RD, a plaintiff alleging claims under the NMHRA must first exhaust the administrative grievance process with respect to all named defendants. *See Campos*, 828 F. Supp. 2d at 1267. Plaintiff alleges that she

exhausted her administrative remedies, [Doc. 77] at 40, but she does not specify which Defendants were named in the administrative proceeding, nor does she allege which of the nine Defendants she seeks to assert her NMHRA claims against. Plaintiff suggests that it is clear from her complaint that she seeks to assert claims against each of the Defendants, but the Court will not make that assumption, even under the liberal pleading standards afforded to her as a pro se party.[15] Nor will the Court require Defendants to guess whom Plaintiff is asserting her claims against. In fact, Defendants pointed out this lack of clarity in their response to Plaintiff's motion to amend—they argued that, without knowing against whom Plaintiff was bringing her NMHRA claims, they could not evaluate exhaustion. [Doc. 82] at 6. Plaintiff did not address this argument in her reply. The Court is not requiring Plaintiff to make a more specific showing as to exhaustion of her claims. Rather, Plaintiff must clearly allege the individual Defendants against whom she is asserting her NMHRA claims.

Plaintiff's motion will be denied without prejudice as to her NMHRA claims. Plaintiff will be permitted another opportunity at amendment to allege violation of the NMHRA, specifying which Defendants she seeks to assert claims against.

## VI. Conclusion

Plaintiff's motion will be granted in part and denied in part. Plaintiff may proceed on the following claims: (1) her FPWA/EPA claims against Defendant GSD; (2) her WPA claims against Defendant GSD and Defendant Burckle in his official capacity; (3) her IPRA claim

_____

[15] Indeed, it is far from obvious to the Court that Plaintiff's NMHRA claim was intended against all Defendants. By way of example, Plaintiffs allegations in support of her NMHRA claims are devoid of any material reference to Defendant McLean, who is counsel for Defendants.

against Defendant GSD; and (4) her FMLA claim against Defendant Dawson.  Plaintiff's motion to amend will be denied as to the other claims and parties Plaintiff seeks to add, for the reasons stated herein.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's objections to Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 91] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 90] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Third Motion for Leave to Amend [Doc. 77] is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to Plaintiff's IPRA claim against Defendant GSD and her FMLA claim against Defendant Dawson.  It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that, within **21 days** of entry of this Order, Plaintiff file an amended complaint consistent with the foregoing.

**IT IS SO ORDERED** this 20th day of June, 2018.

**M. CHRISTINA ARMIJO**
**Senior United States District Judge**