IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HEATHER BURKE,

    Plaintiff,

v.                                                                                          No. 16-cv-0470 SMV/JFR

STATE OF NEW MEXICO GENERAL SERVICES
DEPARTMENT, EDWYNN BURCKLE, JAY HONE,
ANGELA DAWSON, BRENDA GUETHS, and
KAREN BALTZLEY,

    Defendants.[1]

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT IV—FMLA INTERFERENCE

THIS MATTER is before the Court on Plaintiff's Motion and Memorandum in Support of Summary Judgment on Count IV—FMLA Interference ("Motion for Partial Summary Judgment"), filed on March 8, 2019. [Doc. 149]. Defendant Angela Dawson timely[2] responded on August 30, 2019. [Doc. 209]. Plaintiff replied on September 12, 2019. [Doc. 218]. The Court held oral argument on the Motion on October 16, 2019. [Doc. 243] (clerk's minutes). The parties consented to have the undersigned conduct dispositive proceedings and enter final judgment in this matter. [Doc. 104]. The Court has considered the briefing, the relevant portions of the record, the relevant law, and the oral argument. Being otherwise fully advised in the premises, the Court finds that the Motion is not well-taken and will be DENIED.

---

[1] The State of New Mexico is no longer a party in this action. *See* [Docs. 50, 53]. All other Defendants were named in Plaintiff's Amended Complaints [Docs. 53, 54] following remand from the Tenth Circuit.

[2] After the Court stayed discovery, it ordered Dawson to respond no later than August 30, 2019. [Doc. 170] at 12–13.

# BACKGROUND[3]

Plaintiff worked for Defendant New Mexico General Services Department ("GSD") as an Information Technology ("IT") Generalist 2 from 2013 to 2016. [Doc. 94] at 3 (Third Amended Complaint). Defendant Baltzley was her direct supervisor. *Id.* Defendant Burckle was Baltzley's supervisor. *Id.* Defendant Dawson was GSD's Human Resources Bureau Chief during the relevant time period. [Doc. 149-2] at 18.

Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") at least five times. *See* [Doc. 149] at 14–27. She claims that she needed the leave due to health complications following a ski accident and after being treated for breast cancer. *Id.* at 4–10. Plaintiff alleges that Defendants interfered with her FMLA leave in a number of ways: by excluding her overtime hours when calculating her FMLA-leave entitlement, by failing to allow her to return to work upon expiration of FMLA leave, by failing to give her proper notice of her rights under the FMLA, by miscalculating her available leave, and by attempting to terminate her employment because her illness prevented her from performing the essential functions of her job. *Id.* at 13–22, 26–27.

As to the final allegation, Plaintiff asserts that Defendants attempted to fire her "for being too sick to work" by sending her a notice of contemplated separation signed by Burckle on August 31, 2015. *Id.* at 21. Plaintiff then asserts that she, Dawson, Burckle, and one additional GSD employee attended an oral-response hearing to discuss the notice of contemplated separation. *Id.* She claims that Defendants told her at this hearing that she would be terminated for being unable to work. *Id.* at 7. She also claims, however, that Defendants told her that they would

---

[3] As Plaintiff moves for summary judgment, these facts are taken in the light most favorable to Dawson. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

withdraw the notice of contemplated separation if she were to provide a written statement from her doctor certifying that she was able to return to work.[4] *Id.* Plaintiff provided such certification, and Dawson sent her a letter notifying her that GSD had withdrawn its notice of contemplated separation. *See* [Doc. 149-2] at 25.

On April 21, 2016, Plaintiff filed suit in New Mexico state court. [Doc. 1-2] at 1. Defendants removed the case to federal court on May 23, 2016. [Doc. 1] at 1. On July 11, 2018, Plaintiff filed her Third Amended Complaint. [Doc. 94]. She alleges in Count IV that Dawson, in her individual capacity, interfered with her use of FMLA leave. *Id.* at 34–36. Plaintiff filed the instant Motion for Partial Summary Judgment on her FMLA-interference claim against Dawson on March 8, 2019. [Doc. 149].

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—[her] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir. 1990) (first alteration in original) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). A court must deny summary judgment if a reasonable trier of fact could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

---

[4] Plaintiff points the Court to no record evidence substantiating her claims about what occurred at this hearing. Though the Court recognizes that Plaintiff has filed a pending Motion for Sanctions related to Defendants' alleged failure to produce materials related to the notice of contemplated separation, *see* [Doc. 202] at 10–13, that filing does not allow the Court to assume that certain evidence exists and would favor Plaintiff.

3

applying this standard, the court must construe the evidence in the light most favorable to the non-moving party. *Tolan*, 572 U.S. at 657.

Plaintiff proceeds pro se. Courts liberally construe pro se filings. *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1073 (10th Cir. 2014). Yet, courts cannot act as advocates for pro se parties, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and pro se parties must comply with the Federal Rules of Civil Procedure, *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

## ANALYSIS

An interference claim under the FMLA has three elements: "(1) that [the employee] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1132 (10th Cir. 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). A plaintiff bears the burden of proof by a preponderance of the evidence on the first two elements of this test. If she meets her burden, then the burden of proof shifts to the defendant to demonstrate that its actions were unrelated to the plaintiff's exercise of FMLA rights. *See Janczak v. Tulsa Winch, Inc.*, 621 F. App'x 528, 531 (10th Cir. 2015); *Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 653 (10th Cir. 2014).

Dawson argues that the Court should deny Plaintiff's Motion for Partial Summary Judgment for four reasons. First, she argues that there is an issue of fact over whether Dawson was Plaintiff's "employer" under the FMLA. [Doc. 209] at 13–14. Second, she argues that Plaintiff fails to present any evidence suggesting she was entitled to FMLA leave at the time of the alleged incidents of interference. *Id.* at 14–15. Third, Dawson contends that she did not subject

Plaintiff to an adverse employment action and, even if she did, that Plaintiff suffered no prejudice from the alleged actions. *Id.* at 15–30. Finally, she argues that there is an issue of fact over whether Dawson's actions caused an FMLA violation. *Id.* at 29–30. Because the Court agrees with Dawson's first argument, it will not address her remaining arguments.

**A.      Plaintiff fails to meet her burden to show that there is no genuine issue of fact over whether Dawson was her "employer" under the FMLA.**

The FMLA subjects only employers to liability. 29 U.S.C. § 2615(a) (2018). The Act defines an "employer" as follows:

> The term "employer"—
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day each of 20 or more calendar workweeks in the current or preceding calendar year;
> (ii) includes—
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> (II) any successor in interest of an employer;
> (iii) includes any "public agency[,"] as defined in section 203(x) of this title; and
> (iv) includes the Government Accountability Office and the Library of Congress.

§ 2611(4)(A). The District of New Mexico has interpreted this definition to include individual employees of public agencies under certain circumstances. *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1036–40 (D.N.M. 2017).

Though the Tenth Circuit has yet to establish the exact test courts must use to determine when an individual meets the FMLA's definition of "employer," courts within the District of

New Mexico have consistently predicted that it will use the economic-reality test[5] to do so. *See id.* at 1039–40; *see also Gonzalez-Aller v. N.N.M. Coll.*, No. 11-cv-0105 LH/ACT, 2012 WL 13081245, at *5 (D.N.M. May 10, 2012); *Saavedra v. Lowe's Home Ctrs., Inc.*, 748 F. Supp. 2d 1273, 1292–93 (D.N.M. 2010). The test requires courts to balance whether the alleged employer (1) has the power to hire and fire employees, (2) supervises and controls employee work schedules or conditions of employment, (3) determines the rate and method of payment, and (4) maintains employment records. *Cordova*, 283 F. Supp. 3d at 1039. In addition to those four factors, courts also consider (5) "the defendant's control over and involvement in the plaintiff's ability to take FMLA leave and return to work." *Id.* at 1040. No one factor is dispositive; courts must consider the totality of the circumstances. *Id.* at 1039.

When determining individual liability, courts often emphasize the first and last factors, that is, the power to hire and fire and control over the ability to take FMLA leave. *Saavedra*, 748 F. Supp. 2d at 1293. In *Saavedra*, the plaintiffs alleged that defendant Burrows had the authority to fire employees and that she supervised employee work schedules and other areas of employment. *Id.* at 1295. They also alleged that Burrows changed Louise Saavedra's leave status and refused to accept a note from that plaintiff's doctor permitting her to return to work. *Id.* Such allegations enabled the FMLA-interference claim to survive a motion to dismiss because Louise Saavedra "alleged specific facts regarding Burrows' control of the nature and duration of [one plaintiff's] leave and of Burrows' ability to fire [that plaintiff]." *Id.* Louise Saavedra alleged no facts

---

[5] The Tenth Circuit developed the economic-reality test in the context of a Fair Labor Standards Act claim. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). Such a test applies to FMLA claims because the definitions of "employer" in each of the two statutes are "materially identical." *Saavedra v. Lowe's Home Ctrs., Inc.*, 748 F. Supp. 2d 1273, 1292 (D.N.M. 2010).

regarding Burrows' role in determining her rate and method of payment, or regarding whether Burrows maintained employment records. *Id.* Yet, the court could, at the motion-to-dismiss stage, "reasonabl[y] infer[] . . . that, given that Burrows managed [one plaintiff's] leave and informed her of her termination, Burrows probably had at least some knowledge of and/or influence in determining [that plaintiff's] rate and method of payment." *Id.* "[V]iewing the facts in the light most favorable to the [p]laintiff," the court found the allegations sufficient to defeat the motion to dismiss. *Id.*; *see Cordova*, 283 F. Supp. 3d at 1040–41 (finding that the plaintiff sufficiently pleaded individual-employer liability under the FMLA because he alleged that the individual defendants supervised him, directly interacted with him regarding FMLA leave requests, told him that he could not leave work, and sent him a termination letter).

Some courts outside the Tenth Circuit have rejected the economic-reality test described in *Saavedra* and *Cordova*, holding that if the alleged employer "possesses control over the aspect of employment alleged to have been violated, the [FMLA] will apply to that individual." *Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995). In *Freemon*, two individual defendants—Ivy and Foley—recommended that Freemon be terminated due to her FMLA absences, telling her that she could avoid termination only if she submitted proper medical-release forms. *Id.* Individual defendant Hulsh directed Foley to fire Freemon. *Id.* The court denied Hulsh, Foley, and Ivy's motion for summary judgment because they played a role in Freemon's firing and "were capable of impeding or denying [her] ability to exercise her . . . right to leave under the FMLA." *Id.* at 332. Freemon also sued her temporary supervisor, Corbin, individually. *Id.* The court granted summary judgment in favor of Corbin because "there [was] no evidence that she played any role in [Freemon's] discharge." *Id.* That the plaintiff gave FMLA documentation to Corbin did not

7

suffice to subject her to individual liability under the FMLA. *Id.* Like *Saavedra* and *Cordova*, the ability to fire the plaintiff played a critical role in determining individual liability under the FMLA.

Here, though Dawson undoubtedly played a role in some of the alleged FMLA violations, Plaintiff fails to show that Dawson was her "employer" as a matter of law. Most of the economic-reality factors weigh against finding that Dawson was Plaintiff's "employer" under the FMLA. First, the record evidence does not establish that Dawson had the ability to hire or fire Plaintiff. [Doc. 209-4] at 1. Dawson avers that she lacked the authority to hire or terminate GSD employees.[6] [Doc. 209-4] at 1. Burckle—not Dawson—signed the notice of contemplated separation notifying Plaintiff that GSD was considering firing her.[7] [Doc. 149-2] at 21. Plaintiff alleges that she sent her response to the notice to Dawson, *see* [Doc. 218] at 4, and that Dawson informed her of GSD's decision to withdraw the notice, *see* [Doc. 149-2] at 25. But these facts do not establish that Dawson had the authority to fire Plaintiff. Viewing the facts in the light most favorable to Dawson, a reasonable factfinder could conclude that Dawson simply acted as an intermediary, relaying communications between Plaintiff and Burckle without having any firing authority herself. Plaintiff also relies on the allegation that Dawson attended the oral-response hearing related to the notice of contemplated separation. [Doc. 149] at 21. But she cites to no

---

[6] Plaintiff argues that Dawson's "self-serving affidavit[] . . . lack[s] factual support," and the Court should therefore disregard it. [Doc. 218] at 3. The Court disagrees. Dawson expressly states that she has "personal knowledge of the facts stated" in her declaration. [Doc. 209-4] at 1. Though Dawson gives no more information describing how she knows what her job duties and limitations entail, the Court may infer such knowledge given that Dawson, in her declaration, avers to facts about her *own* job at GSD. *See Martinez v. Sw. Cheese Co.*, No. 12-cv-0660 KG/WPL, 2014 WL 11430953, at *4 (D.N.M. July 1, 2014) (citing cases holding that an affiant's "personal knowledge may be inferred from [her] employment position and responsibilities as well as other contextual factors" (citing *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 867 (E.D. Va. 2012)).

[7] Moreover, even if Dawson did sign the notice of contemplated separation, such an action would not establish that Dawson had the ability to fire Plaintiff. The notice of contemplated separation did not effectuate a firing; it simply notified Plaintiff of an action that GSD was contemplating.

record evidence to support that claim.[8] The record evidence does not establish that Dawson had the authority to fire Plaintiff. The first factor therefore weighs against finding Dawson to be Plaintiff's "employer."

Second, Plaintiff fails to present any evidence suggesting that Dawson supervised Plaintiff or controlled her work schedule. Plaintiff alleges that Dawson and Baltzley changed her job duties after she returned from FMLA leave. *Id.* at 7. In support of this assertion, Plaintiff cites to a chart detailing her job duties. *See* [Doc. 149-2] at 26. Yet, this chart says nothing about who had the authority to control Plaintiff's job duties; it simply lists her job assignments.[9] *See id.* Moreover, Dawson avers that she did not control Plaintiff's work schedule, job responsibilities, assignments, or duties. [Doc. 209-4] at 1. The second factor therefore weighs against finding Dawson to be Plaintiff's "employer."

Similarly, Plaintiff points to no evidence on the record indicating that Dawson determined Plaintiff's rate or method of payment. Dawson avers that she did not determine the salaries of any IT Generalist, including Plaintiff. [Doc. 209-4] at 1. Nor does Plaintiff identify any evidence suggesting that Dawson maintained employment records. Therefore, the third and fourth factors weigh against finding Dawson to be Plaintiff's "employer."

---

[8] Even if Dawson attended the hearing, Plaintiff provides no authority indicating that mere attendance at a hearing related to a potential termination means that the attendee could fire the employee. Plaintiff asserts that "[i]t was clear in this meeting that [Dawson] was involved in the NCA [notice of contemplated separation] decision," without citing to any exhibits. [Doc. 218] at 4. Even if the Court were to find that this statement represents competent summary-judgment evidence—which the Court does not find—the Court would still decline to find that Plaintiff has established the first factor. Simply being "involved" in a potential firing decision—without detailing the extent of the involvement—does not automatically cause a person to have firing authority. If, for example, the extent of Dawson's involvement stopped at her merely discussing Plaintiff's FMLA documentation with Burckle, such involvement would not indicate that Dawson had any firing authority.

[9] Plaintiff's own Amended Complaint names Baltzley as Plaintiff's direct supervisor—not Dawson. [Doc. 94] at 3.

On the other hand, Dawson's apparent ability to control Plaintiff's FMLA leave—coupled with her involvement in some of the alleged FMLA violations at issue—weighs in favor of finding that she was Plaintiff's "employer." Dawson's actions lie at the heart of some of the alleged interferences with Plaintiff's FMLA leave. Specifically, in August of 2015, Plaintiff attempted to return to work, but Dawson told her that she could not do so without fitness-for-duty certification. *See* [Doc. 149-2] at 15. When Plaintiff provided her fitness-for-duty certification in September of 2015 to attempt to return to work after FMLA leave, Dawson rejected the certification and told her to submit a new certification. *See id.* at 24. Additionally, Dawson informed Plaintiff on March 9, 2016, that GSD had denied her FMLA-leave request because she had not yet worked the requisite 1,250 hours needed to qualify for FMLA leave. *Id.* at 45; *see* 29 C.F.R. § 825.110(a)(2) (2019). Two days later, Dawson stated that Plaintiff in fact met the FMLA-eligibility requirements. [Doc. 149-2] at 46. Like the individual defendants in *Saavedra*, *Cordova*, and *Freemon*, Dawson frequently interacted with Plaintiff regarding FMLA leave and exercised at least some control over her ability to take leave. The final factor therefore weighs in favor of finding Dawson to be Plaintiff's "employer" under the FMLA.

Nevertheless, such a finding does not automatically mean that Dawson was Plaintiff's "employer" under the FMLA. Genuine issues of fact remain on four of the five economic-reality factors, and the Court does not find that Dawson's role in approving or explaining Plaintiff's FMLA leave outweighs, as a matter of law, Dawson's inability to hire or fire employees or her inability to supervise Plaintiff and her work schedule. For example, Plaintiff presents insufficient evidence suggesting that Dawson could fire her, and even if Plaintiff presented such evidence, Dawson disputes it. Though not dispositive of this issue, courts often emphasize the first factor

10

more than any other. *See Carpenter v. Refrigeration Sales Corp.*, 49 F. Supp. 2d 1028, 1031 (N.D. Ohio 1999) ("[The individual defendant] administered the FMLA and spoke with Carpenter about her illness. Finally, *and most significantly*, he made the decision to terminate Carpenter . . . ." (emphasis added)); *see also Saavedra*, 748 F. Supp. 2d at 1293. *Saavedra*, *Cordova*, and *Freemon* all relied upon allegations or evidence that the individual defendant *both* had the ability to fire the plaintiff and controlled the plaintiff's FMLA leave. The Court will not find, as a matter of law, that Dawson's control over FMLA leave outweighs her inability to fire Plaintiff—especially given that Plaintiff fails to establish that Dawson supervised her, determined her rate or method of payment, or kept employment records.[10] Based on Dawson's affidavit and the paucity of evidence supporting four of the five economic-reality-test factors, a reasonable trier of fact could make findings which support the legal conclusion that Dawson was not Plaintiff's "employer." Therefore, because Plaintiff failed to meet her burden to prove that no genuine issue of material fact exists and that Dawson was, as a matter of law, her "employer," the Court will deny Plaintiff's Motion for Partial Summary Judgment.

---

[10] Even when *Freemon* (a case from the Northern District of Illinois and, therefore, persuasive authority) stated that the operative test is whether the defendant "possesses control over the aspect of employment alleged to be violated [or, FMLA leave]," 911 F. Supp. at 331, it declined to hold liable an employee who did not fire the plaintiff and found that three other individual "employers" played a role in the plaintiff's termination, *id.* at 332.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion and Memorandum in Support of Summary Judgment on Count IV—FMLA Interference [Doc. 149] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**