IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HEATHER BURKE,

    Plaintiff,

v.                                                                                                                                                   No. 16-cv-0470 SMV/JFR

STATE OF NEW MEXICO GENERAL SERVICES
DEPARTMENT, EDWYNN BURCKLE, JAY HONE,
ANGELA DAWSON, BRENDA GUETHS, and
KAREN BALTZLEY,

    Defendants.[1]

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
COUNT I: FAIR PAY FOR WOMEN ACT AND
COUNT III: INSPECTION OF PUBLIC RECORDS ACT**

THIS MATTER is before the Court on Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment on Count I: Fair Pay for Women Act and Count III: Inspection of Public Records Act, filed on September 26, 2019. [Doc. 230]. Defendant State of New Mexico General Services Department ("GSD") timely[2] responded on October 30, 2019. [Doc. 253]. Plaintiff replied on November 14, 2019. [Doc. 262]. No other Defendant responded to the Motion, and none is needed because Count I and Count III assert claims against only GSD. *See* [Doc. 94] at 30, 33. The Court held oral argument on the Motion on January 9, 2020. [Doc. 288] (clerk's minutes). The parties consented to have the undersigned conduct dispositive proceedings and enter final judgment in this matter. [Doc. 104]. The Court has considered the briefing, the relevant

---

[1] The State of New Mexico is no longer a party in this action. *See* [Docs. 50, 53]. All other Defendants were named in Plaintiff's Amended Complaints [Docs. 53, 54] following remand from the Tenth Circuit.
[2] The Court permitted GSD to respond to the instant Motion no later than October 30, 2019. *See* [Doc. 248] at 2.

portions of the record, the relevant law, and the oral argument. Being otherwise fully advised in the premises, the Court will DENY the Motion.[3]

## BACKGROUND[4]

GSD employed Plaintiff as an Information Technology ("IT") Generalist II from 2013 to 2016. [Doc. 94] at 3 (Third Amended Complaint). Normally, an IT Generalist II provides technology support within the State of New Mexico, such as by overseeing day-to-day operations of computer networks, troubleshooting technology issues, backing up data, and ensuring network security. *See* [Doc. 230-2] at 5–6. GSD employed two IT Generalist IIs during Plaintiff's tenure at GSD: Plaintiff, a woman, and Maurice Bonal, a man. *Id.* at 5–8, 13.

Bonal began working at GSD as an IT Generalist II on November 1, 2010. [Doc. 253-2] at 1. He received a starting salary of $35.50 per hour. *Id.* Plaintiff began working at GSD on January 22, 2013. *Id.* at 2. She received a starting salary of $32.50 per hour. *Id.* Upon her hiring, Plaintiff "primarily handle[d] computer desktop responsibilities for GSD because she lacked the requisite level of experience and knowledge of the GSD infrastructure and systems to handle the

---

[3] The Court joins the chorus of judges reminding Plaintiff of her obligation to seek opposing counsel's concurrence before filing *any* motion. *See* D.N.M.LR-Civ. 7.1(a); [Doc. 278] at 8–9 (Robbenhaar, J.) (citing six portions of the record showing the Court warning Plaintiff that failure to confer with opposing counsel before filing a motion may result in its denial, then denying Plaintiff's Motion for Contempt and Sanctions for this reason); *cf.* Recording of Oral Argument, February 26, 2019, Liberty—Hondo Courtroom, at 33:35–36:53 (Khalsa, J.) (denying Plaintiff's Motion to Compel without prejudice for failure to confer with opposing counsel prior to its filing). Plaintiff candidly admits that she did not seek GSD's concurrence "[d]ue to the dispositive nature of this [M]otion." [Doc. 230] at 1 n.1. No exception for dispositive motions appears in Local Rule 7.1(a). Though the Court would be within its discretion to deny Plaintiff's Motion for Partial Summary Judgment for this reason, it declines to do so because Plaintiff's Motion fails on the merits. Failure to comply with Local Rule 7.1(a) may result in denial of any future motions.

[4] As Plaintiff moves for summary judgment, these facts are taken in the light most favorable to GSD. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). GSD argues in numerous instances that Plaintiff's evidence in support of her Motion is inadmissible. *See* [Doc. 253] at 2–7. Yet, GSD never argues that Plaintiff's evidence "cannot be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2). Therefore, the Court overrules GSD's objections. More importantly, as explained below, even if the Court considered Plaintiff's evidence, it would still deny her Motion.

server, storage, and network responsibilities that Mr. Bonal was already responsible for." *Id.* As Plaintiff continued working at GSD, she gradually gained additional duties, eventually "[taking] on some of the server, storage, and network responsibilities." *Id.* at 3. Plaintiff and Bonal each received various raises throughout their tenure at GSD. By 2014, Plaintiff earned $70,324.28 annually, while Bonal earned $76,815.75 annually. [Doc. 253-2] at 3. Defendant Karen Baltzley supervised both Plaintiff and Bonal. *Id.* at 2. Defendant Edwynn Burckle served as the Cabinet Secretary for GSD during the events underlying this lawsuit. [Doc. 253-2] at 11.

On April 18, 2016, Plaintiff emailed GSD Director of Communications Estevan Lujan requesting "a copy of emails sent and received between Karen Baltzley and Maurice Bonal of the General Services Department . . . from 2013–present" under the New Mexico Inspection of Public Records Act ("IPRA"). [Doc. 230-3] at 1. Later on April 18, 2016, she added to this request, requesting Bonal's hiring documents as well. *Id.* at 2. Lujan responded on April 20, 2016, stating that he "[would] require additional time to research and respond to [Plaintiff's] request." *Id.*

Plaintiff filed her Complaint, pro se, against the State of New Mexico and various employees on April 21, 2016, in New Mexico state court. [Doc. 1-2] at 1. Among other claims, she alleged that Defendants violated the New Mexico Fair Pay for Women Act ("FPWA") by paying her a lower annual salary than Bonal. *See* [Doc. 1-8] at 10–11.

On May 2, 2016, Plaintiff again expanded her IPRA request, requesting documents showing GSD staff's overtime hours and the amount of money that the State of New Mexico has paid to settle (1) whistleblower claims from 2010 to the present, (2) and civil-rights claims from the prior 15 years. [Doc. 253-6] at 1. Thus, at this point, Plaintiff had outstanding requests for four categories of documents: the emails between Baltzley and Bonal, Bonal's hiring documents,

overtime documentation, and documents showing the above settlement amounts. On May 3, 2016, Lujan again informed Plaintiff that he "[would] need more time to process [her] request." [Doc. 230-3] at 4.

On May 13, 2016, Lujan emailed Plaintiff a letter formally responding to her IPRA requests. [Doc. 230-3] at 5. Lujan attached to the email documents responsive to the overtime-hours request. *Id.* at 6. He found Plaintiff's request for all emails between Bonal and Baltzley between 2013–2016 to be "'broad and burdensome' . . . requir[ing] additional time to produce" because the emails "[were] voluminous and require[] extensive review to ensure compliance with IPRA that no information that is prohibited from release is contained within the documents." *Id.* Lujan in part denied Plaintiff's request for the settlement amounts. *Id.* at 7. He found the remainder of the request for the settlement amounts broad and burdensome. *Id.* at 6–7.

Lujan concluded his letter by stating, "Given all of these facts, we are still happy to provide you with regular installments of [the] information you request[ed]. Please contact us with what would be the best way to start an installment schedule. In the alternative, if you make your request less broad the process will be expedited." *Id.* at 8. Lujan stated that he would "continue to be in touch with [Plaintiff] regarding the outstanding items[5] remaining in [her] portfolio of requests" and that he would "be in touch [with her] no later than May 20, 2016." *Id.* Lujan did not contact Plaintiff by May 20, 2016. On May 22, 2016, Plaintiff emailed Lujan asking, "When will the other records be provided to me?" [Doc. 253-7] at 1. Lujan never responded to this email. Plaintiff never responded to Lujan's offer to begin inspecting the requested records on an installment basis.

---

[5] Lujan does not expressly define what "outstanding items" he believed remained.

Plaintiff submitted a formal IPRA grievance with the New Mexico Office of the Attorney General at some time after one of her communications with Lujan.[6] *See* [Doc. 253-9] at 3–5. She alleged that she never received the emails (among other documents) and never received a written explanation for their non-production within 15 days. *Id.* at 4–5.

Defendants removed this case to federal court on May 23, 2016. [Doc. 1]. Plaintiff resigned from her position at GSD on July 5, 2016. [Doc. 253-2] at 3. On May 15, 2017, the Office of the Attorney General sent Lujan a letter determining that GSD had violated the IPRA by "not timely providing the emails between [Ka]ren Baltzley and Maurice Bonal for inspection." [Doc. 230-3] at 11. The Office of the Attorney General concluded this letter by stating, "It is the expectation of this office that if the emails have not yet been produced for inspection, that they will be produced to [Plaintiff] immediately." *Id.* at 15.

Plaintiff filed her Third Amended Complaint on July 11, 2018. [Doc. 94]. In Count I, she asserts an FPWA claim and a federal Equal Pay Act ("EPA") claim against GSD. *Id.* at 30–32. In Count III, she asserts an IPRA claim against GSD. *Id.* at 33–34. Plaintiff filed the instant Motion for Partial Summary Judgment on September 26, 2019, arguing that she is entitled to judgment as a matter of law on her FPWA claim and IPRA claim. [Doc. 230]. To date, Plaintiff has not received all emails between Baltzley and Bonal that she requested under the IPRA.[7] *Id.* at 7.

---

[6] The IPRA grievance does not identify the date on which Plaintiff filed it. *See* [Doc. 253-9] at 3–5.
[7] Defense counsel stated at oral argument that Plaintiff received relevant and discoverable emails between Baltzley and Bonal through discovery in the instant litigation, though she did not receive all emails that she requested under the IPRA.

5

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court must construe the evidence in the light most favorable to the non-moving party. *Tolan*, 572 U.S. at 657. "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—[her] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir. 1990) (first alteration in original) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). A court must deny summary judgment if a reasonable trier of fact could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff proceeds pro se. Courts liberally construe pro se filings. *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1073 (10th Cir. 2014). Yet, courts cannot act as advocates for pro se parties. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## ANALYSIS

**A.   The Court will deny Plaintiff's Motion as to her FPWA claim because, in relying solely on general job descriptions of the work allegedly performed by her and Bonal, she fails to establish that she and Bonal performed substantially equal work.**

GSD argues that the Court should deny Plaintiff's Motion related to her FPWA claim for four reasons. First, GSD contends that Plaintiff improperly relies solely upon job descriptions to show that she performed substantially equal work as Bonal. [Doc. 253] at 15–17. Second, it argues that Plaintiff wrongly compares her salary only to Bonal, ignoring 47 other IT Generalist IIs employed by the State of New Mexico. *Id.* at 17–18. Third, it argues that it paid Plaintiff

according to a merit-based compensation system, an affirmative defense under the FPWA. *Id.* at 18–23. Finally, it contends that if the Court finds that GSD did not pay Plaintiff according to a merit system, it nonetheless justified Plaintiff's wage based on factors other than sex. *Id.* at 23–25. As the Court agrees with GSD's first argument, it will not reach the remaining arguments.

Plaintiff moves for summary judgment solely on her FPWA claim in Count I of her Third Amended Complaint. [Doc. 230] at 10. She does not move for summary judgment on her EPA claim. Nonetheless, the Court will analyze Plaintiff's FPWA claim pursuant to the same legal principles as the EPA because the two statutes "are coterminous." *Darr v. N.M. Dep't of Game & Fish*, 403 F. Supp. 3d 967, 1001 (D.N.M. 2019). The FPWA and EPA provide that no employer

> shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort[,] and responsibility and that are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1) (2018); N.M. Stat. Ann. § 28-23-3(A) (2013). To establish a prima facie case of wage discrimination under the EPA, a plaintiff must demonstrate that "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort[,] and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1356 (10th Cir. 1997)).

A court determines whether a plaintiff and her male counterparts performed "substantially equal" work by looking to the skill, effort, and responsibility required by each position. *See*

§ 28-23-3(A). The positions need not be identical to be considered "substantially equal." *EEOC v. Cent. Kan. Med. Ctr.*, 705 F.2d 1270, 1272 (10th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). Yet, "[t]he Tenth Circuit does not construe the 'equal work' requirement broadly, and has stated that failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." *Casalina v. Moniz*, No. 13-cv-0535 KG/WPL, 2016 WL 7486190, at *4 (D.N.M. Oct. 27, 2016) (quoting *Sprague*, 129 F.3d at 1364).

A court must analyze the tasks actually performed by the employees to determine whether they performed work requiring equal skill, effort, and responsibility. *See* 29 C.F.R. § 1620.14(c) (1986). "Skill includes such considerations as experience, training, education, and ability." *Cent. Kan. Med. Ctr.*, 705 F.2d at 1272 (quoting *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981). "Effort refers to the physical or mental exertion necessary to the performance of a job." *Id.* (quoting *Universal Underwriters Ins. Co.*, 653 F.2d at 1245). "Responsibility concerns the degree of accountability required in performing a job." *Id.* (quoting *Universal Underwriters Ins. Co.*, 653 F.2d at 1245).

Finally, the determination of whether two positions constitute "substantially equal" work "turns on the actual content of the job—not mere job descriptions or titles." *Riser*, 776 F.3d at 1196; *see Cent. Kan. Med. Ctr.*, 705 F.2d at 1273. "[A] person can have the same job title and same general duties as a comparator employee, yet not meet the textual touchstone of the EPA—equal skill, effort, and responsibility." *Clayton v. Vanguard Car Rental U.S.A., Inc.*, 761 F. Supp. 2d 1210, 1270 (D.N.M. 2010). In determining whether two positions require "substantially equal" work, a court must "make a practical judgment based on all the facts and circumstances of the case . . . As a result, summary judgment on this issue often will be inappropriate." *Casalina*, 2016

8

WL 7486190, at *5; *see* 29 C.F.R. § 1620.14(a) ("What constitutes equal skill, equal effort, or equal responsibility cannot be precisely defined.").

The Court will deny Plaintiff's Motion for Summary Judgment as to her FPWA claim because she fails to show that she performed substantially equal work as her alleged comparator, Bonal. She primarily relies on three types of evidence to meet her burden on this element of her prima facie case: (1) a State Personnel Office form requesting an additional IT Generalist II position, (2) performance evaluations of her and Bonal, and (3) Burckle's testimony that the duties of Plaintiff and Bonal were substantially the same. Each type of evidence, however, consists of general job descriptions and fails to identify the work that Plaintiff or Bonal actually performed.

Plaintiff first produces a State Personnel Office form, arguing that the form shows that her and Bonal's positions required the same skill, effort, and responsibility. [Doc. 230] at 5. This form simply describes a position that Baltzley *requested* be established; it does not describe what work Burke or Bonal actually performed.[8] *See* [Doc. 230-2] at 1–3. Additionally, when describing the requested IT Generalist II position, the form merely gives a general job description. *See, e.g.*, *id.* at 2 ("This position exists to manage and support the GSD IT network, server, and security infrastructure."); *id.* ("The IT Generalist [II] must also identify risks and issues related to projects/systems and know when to escalate them to Agency leadership. . . . The [IT Generalist II] is required [to] manage complex technical projects with both employee and contractor support."). These descriptions shed insufficient light on "the actual content of [Plaintiff's] job." *Riser*, 776 F.3d at 1196. For example, a reasonable jury could not rely on this form to determine whether

---

[8] When Baltzley signed this form, GSD had not yet even employed Plaintiff. *See* [Doc. 230-2] at 3.

Plaintiff and Bonal expended substantially equal effort because the descriptions do not illuminate the level of physical or mental exertion that Plaintiff and Bonal actually—not theoretically—expended. *See Cent. Kan. Med. Ctr.*, 705 F.2d at 1272. Because this form effectively functions as a job description, Plaintiff cannot rely on it to support her prima facie case.

For the same reason, Plaintiff's and Bonal's performance evaluations do not establish that they performed substantially equal work as a matter of law. Plaintiff proffers two[9] performance evaluations—one for her and one for Bonal—to argue that the two positions required equal skill, effort, and responsibility. *See* [Doc. 230-2] at 5–8. In the section of each evaluation entitled "Primary Job Assignments & Performance Standards," it appears that the evaluator copied and pasted a two-page job description for an IT Generalist II, not unlike one found on a job posting. *See id.* These job descriptions represent the highest level of generality and contain no analysis of the work Plaintiff or Bonal actually performed, as opposed to simply the typical or expected requirements of their positions. *See, e.g.*, *id.* at 5, 7 ("Oversee the day-to-day operation of computer networks including scheduled monitoring of GSD infrastructure systems[,] network, servers, network-related devices . . . ."); *id.* ("Ensure that all systems/data as defined have successful backups . . . ."); *id.* ("Assist staff with the installation, configuration, and ongoing usability of desktop computers . . . .").

Moreover, these job descriptions each contain over 25 bullet points listing the normal job duties of an IT Generalist II. *See id.* at 5–8. Such evidence does not establish that Plaintiff and

---

[9] Plaintiff submits a third performance evaluation containing largely the same language as the other two evaluations; the Court therefore finds it inadequate to establish that Plaintiff and Bonal performed substantially equal work for the same reason it finds the other two evaluations inadequate. *See* [Doc. 230-2] at 9–10.

Bonal performed substantially equal work. At most, it establishes that GSD expected Plaintiff and Bonal to work on similar tasks—an inadequate showing on the first prong of Plaintiff's prima facie case. *See Fletcher v. Babbitt*, No. 99-cv-0065 MV/RLP, 2000 WL 36739891, at *5 (D.N.M. Apr. 5, 2000) (finding that the two positions did not constitute substantially equal work because, among other reasons, though the plaintiff and her male counterpart each performed similar cleanup duties, "such cleanup duties consisted of only 5–20 percent of [the male's] work" and the male "spent roughly 50% of his time on projects unrelated to the work [the] [p]laintiff was performing in her own job"); *see also Clayton*, 761 F. Supp. 2d at 1270 (holding that "even though [the plaintiff] has presented evidence that the general duties of [her employer's] general managers are the same, this evidence does not establish a prima[]facie case that the other general managers performed substantially equal work").

Finally, Burckle's deposition testimony does not establish that Plaintiff and Bonal performed substantially equal work. Burckle testified that the "duties and responsibilities" of Plaintiff and Bonal "[were] substantially the same." [Doc. 291-1] at 2. This statement amounts to a legal conclusion, which "[is] insufficient to satisfy the requirements of Rule 56." *Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970). Moreover, Burckle does not explain which work Plaintiff and Bonal actually performed or how those tasks "[were] substantially the same." *Id.* Based on the very limited snippet of his testimony that Plaintiff submitted, it appears that he simply compared the typical job duties that GSD *expected* its IT Generalist IIs to complete, not the work

11

that Plaintiff or Bonal *actually performed*. *See id.* His testimony therefore fails to support Plaintiff's prima facie case.[10]

Ultimately, all evidence presented by Plaintiff shows merely that she and Bonal had substantially equal job descriptions. The Tenth Circuit has repeatedly held that such a showing does not establish Plaintiff's prima facie case. *See Riser*, 776 F.3d at 1196; *Cent. Kan. Med. Ctr.*, 705 F.2d at 1273. Therefore, the Court will deny Plaintiff's Motion for Summary Judgment as to Count I of her Third Amended Complaint.

**B. The Court will deny Plaintiff's Motion for Summary Judgment on her IPRA claim because she fails to show that (1) GSD violated the IPRA by making the emails available for inspection on May 13, 2016, and (2) GSD's alleged violation was unreasonable.**

Plaintiff contends that the Court should enter judgment in her favor on her IPRA claim because GSD never provided the requested emails between Bonal and Baltzley,[11] despite Plaintiff's request for them. [Doc. 230] at 13–14. GSD argues that Plaintiff is not entitled to summary judgment on her IPRA claim for two reasons. First, it argues that a genuine issue of material fact exists over whether Lujan's May 13, 2016 letter constituted a denial of Plaintiff's request for the emails between Baltzley and Bonal. [Doc. 253] at 25–28. Second, it argues that a genuine issue of material fact exists over whether GSD unreasonably failed to explain its denial

---

[10] Even if the Court found that this deposition testimony sufficed to meet Plaintiff's prima facie case, the Court would still find that an issue of fact remained on whether Plaintiff and Bonal performed substantially equal work. Baltzley avers that though Plaintiff performed "some" of the server, network, and storage responsibilities that Bonal typically performed, Plaintiff and Bonal "worked on different projects and supported different divisions within GSD." [Doc. 253-2] at 3. Though two employees could perform substantially equal work when working on different projects, *see Cent. Kan. Med. Ctr.*, 705 F.2d at 1273, Burckle's testimony fails to show that Plaintiff's projects required substantially equal skill, effort, and responsibility as those assigned to Bonal.

[11] Though Plaintiff's Third Amended Complaint seems to allege that GSD also violated the IPRA by failing to provide Bonal's hiring documents, *see* [Doc. 94] at 30, Plaintiff limits the instant Motion solely to GSD's alleged failure to permit inspection of the emails between Baltzley and Bonal.

12

under Section 14-2-11(C). *Id.* at 28–29. For the following reasons, the Court finds that Plaintiff is not entitled to summary judgment on her IPRA claim.

The New Mexico legislature passed the IPRA understanding "that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." N.M. Stat. Ann. § 14-2-5 (1993). To that end, the IPRA permits any person wishing to inspect public records to submit a written request to a government custodian to view certain public records. *Id.* § 14-2-8(A).

Normally, "[a] custodian receiving a written request shall permit the inspection [of the records] immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request." *Id.* § 14-2-8(D). If the 15-day period elapses without either production of the documents or a determination that the request is excessively burdensome or broad, the IPRA deems the request denied. *Id.* § 14-2-11(A). Yet, "[i]f a custodian determines that a written request is excessively burdensome or broad, an additional reasonable period of time shall be allowed to comply with the request." *Id.* § 14-2-10. In such a situation, the custodian, within 15 days of the request for records, must notify the requester in writing that he will need additional time to respond to the request. *Id.* The requester "may deem [her] request denied and may pursue the remedies available pursuant to the [IPRA] if the custodian does not permit the records to be inspected in a reasonable period of time." *Id.*

A custodian may require additional time to respond to a burdensome or broad request for many reasons. For example, the IPRA requires a custodian to separate exempt and non-exempt information contained in the requested documents prior to permitting inspection. *See id.* § 14-2-9(A). Exempt information includes letters of reference concerning employment, certain

letters or memoranda in personnel files, and exemptions as otherwise provided be law. *Id.* § 14-2-1(B), (C), (H). The final exemption includes statutory and regulatory bars to disclosure, constitutionally mandated privileges, and privileges established by the New Mexico Rules of Evidence. *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 39, 415 P.3d 505. Additionally, a custodian may redact "protected personal identifier information contained in public records . . . before inspection or copying of a record." § 14-2-1.1. This process may take a significant amount of time when a person requests hundreds or thousands of documents.

Once a request is denied, the custodian must provide a written explanation of the denial within 15 days after receipt of the request. *Id.* § 14-2-11(B)(3). Moreover, once a request is deemed denied, the requester may pursue remedies under the IPRA. *See id.* § 14-2-10 to -11. When a requester prevails in an enforcement action, "the requester may be awarded damages . . . if the failure to provide a timely explanation of denial is determined to be unreasonable." *Id.* § 14-2-11(C). These damages may "not exceed one hundred dollars ($100) per day," *id.* § 14-2-11(C)(2), and begin accruing "from the day the public body is in noncompliance until a written denial is issued," *id.* § 14-2-11(C)(3). The IPRA does not outline precisely when the government's failure to provide a timely explanation of denial becomes unreasonable. *See* § 14-2-11(C)(1). An intentional, bad-faith withholding of documents constitutes an unreasonable violation of the IPRA. *Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 39, 433 P.3d 320. In some circumstances, even an inadvertent non-disclosure of the requested documents can be unreasonable. *See id.* "[T]he question of the reasonableness of a public body's failure to comply with its IPRA obligations is one that must be answered as a matter of fact . . ." *Id.* ¶ 40.

Many of the disputes over Plaintiff's IPRA claim center around Lujan's May 13, 2016 letter to Plaintiff in which he found many of her requests broad or burdensome. The parties dispute whether he made the emails available for inspection in this letter. There, Lujan responded to each of Plaintiff's four IPRA requests. First, he provided documents allegedly responsive to her request for GSD staff's overtime hours. [Doc. 230-3] at 6. Second, Lujan stated that GSD did not have documents responsive to Plaintiff's request for Bonal's hiring documents. *Id.* Third, he found her request for the emails between Baltzley and Bonal broad and burdensome because Plaintiff had requested "voluminous" emails. *Id.* Finally, he partially denied Plaintiff's request for the various settlement amounts and deemed the remainder of her request broad and burdensome. *Id.* at 6–7. At the end of the letter, Lujan offered to provide Plaintiff with "regular installments of [the] information [she] request[ed]" and asked Plaintiff to "contact [GSD] with what would be the best way to start an installment schedule." *Id.* at 8.

A reasonable factfinder[12] could find that he made the emails between Baltzley and Bonal available for inspection in this letter. Plaintiff argued at oral argument that Lujan's offer to view the requested information on an installment basis applied only to her request for documents showing the amount of money the State of New Mexico had paid to settle whistleblower and civil-rights claims—not to her request for the emails. Lujan made this offer directly after finding her request for the settlement amounts broad and burdensome. *See* [Doc. 230-3] at 6–8. In the same paragraph as this offer, he also noted that Plaintiff could access online complaints for the

---

[12] Defense counsel stated at oral argument that she did not know whether a jury or the Court would decide Plaintiff's IPRA claim. Regardless of which entity will hear this claim at trial, issues of fact remain on the IPRA claim, as detailed below.

15

lawsuits seemingly related to her settlement request. *Id.* at 8. These facts could suggest to a reasonable factfinder that Lujan intended this offer to apply only to Plaintiff's request for the documentation of various settlements. Yet, Lujan used vague language when making this offer, stating that GSD "[is] still happy to provide you with regular installments of [the] information you request[ed]." *Id.* A reasonable factfinder could infer that he intended this offer to apply to all requests deemed broad or burdensome given the lack of language tying the offer to a specific IPRA request and the offer's location at the end of the letter.

If the factfinder adopted this latter interpretation of the letter, it could reasonably find (1) that GSD did not violate the IPRA, or (2) that even if GSD violated the IPRA, its violation was not unreasonable. First, Plaintiff has not shown that GSD violated the IPRA by making the emails available for inspection after § 14-2-11(A)'s 15-day deadline. Plaintiff requested the emails between Baltzley and Bonal on April 18, 2016. [Doc. 230-3] at 2.[13] Under § 14-2-8(D), the IPRA required Lujan, no later than the fifteenth day after this request (May 3, 2016), either to permit inspection of the emails or determine them to be excessively burdensome or broad. *See* § 14-2-8(D). Lujan emailed Plaintiff on April 20, 2016, and May 3, 2016, informing her that he needed additional time to process her request. [Doc. 230-3] at 2–4. In these emails, he made no express determination that Plaintiff's request was excessively burdensome or broad. Lujan did not expressly make that determination until May 13, 2016—25 days after Plaintiff's request for the

---

[13] GSD objects to the admissibility of the series of emails between Plaintiff and Lujan from April 18, 2016, through May 4, 2016, arguing that the email string "is incomplete and therefore inadmissible." [Doc. 253] at 5. The Court overrules this objection because no Federal Rule of Evidence or Federal Rule of Civil Procedure requires a party to submit only complete records at the summary-judgment stage. GSD identifies no such rule. Additionally, GSD fails to show that the email string is incomplete. The header indicates that the series of emails contains "7 messages," [Doc. 230-3] at 2, and seven complete messages appear in the email string, *see id.* at 2–4. With no evidence to the contrary, it appears that the email string is complete.

emails. *See id.* at 2–6. Plaintiff seems to argue that based on § 14-2-11(A), because GSD neither produced the emails nor expressly determined her request to be excessively burdensome or broad within the 15-day deadline, the IPRA deemed her request denied. *See* [Doc. 230] at 13–14; *see also* § 14-2-11(A).

Plaintiff's argument is not without merit. Section 14-2-11(A) requires either production of the emails or a determination that the request was excessively burdensome or broad within 15 days. *See* § 14-2-11(A). Nonetheless, she fails to show that GSD did not comply with § 14-2-10's requirements for making that determination. Section 14-2-10 provides that if a custodian determines a request to be excessively burdensome or broad, the "custodian shall provide written notification to the requester within 15 days of receipt of the request that *additional time will be needed to respond to the written request*." § 14-2-10 (emphasis added). If the requester provides this notification, "an additional reasonable period of time shall be allowed to comply with the request." *Id.* Here, Lujan twice notified Plaintiff within the 15-day deadline that he required additional time to respond to her request. His language tracks the language of § 14-2-10 nearly verbatim. *See* [Doc. 230-3] at 2 (April 20, 2016 email) ("I will require additional time to research and respond to your request."); *id.* at 4 (May 3, 2016 email) ("I am notifying you that I will need more time to process your request . . . ."). Plaintiff fails to show that these notifications do not operate as implicit determinations that Lujan considered her request excessively burdensome or broad; he used virtually the exact language provided by § 14-2-10. Plaintiff cites to no case suggesting the IPRA requires an *express* determination that a request is excessively broad and burdensome, as opposed to simply stating that the custodian requires additional time to respond. *See* § 14-2-10. Though close, Plaintiff fails to show that Lujan's statements did not operate as a

determination that he found her requests excessively burdensome or broad.[14] As she has also failed to show that his May 13, 2016 response to her request (in which a reasonable factfinder could conclude that he made the emails available for inspection) came outside "a reasonable period of time" necessary to "comply with the request," *id.*, the Court will deny her Motion.

Second, the Court cannot grant summary judgment in Plaintiff's favor because a reasonable factfinder could find that GSD did not unreasonably withhold the emails based on Lujan's May 13, 2016 letter. As noted above, a reasonable factfinder could find that Lujan made the emails available for inspection in his May 13, 2016 letter. He asked Plaintiff to "contact us with what would be the best way to start an installment schedule." *Id.* Later on May 13, 2016, Plaintiff responded to Lujan's letter, asking questions about requested records other than the emails. [Doc. 253-7] at 1–2. She never mentioned, however, Lujan's request that she provide her availability to begin inspection of the documents on an installment basis. *See id.* On May 22, 2016, Plaintiff emailed Lujan asking for an update on her IPRA request. *Id.* at 1. She asked, "When will the other records be provided to me?" *Id.* However, she again failed to give her availability to begin an installment schedule for inspection of the emails. *See id.*

As Plaintiff requested all emails between Bonal and his supervisor for a three-year period, *see* [Doc. 230-3] at 1, a reasonable factfinder could agree with Lujan's determination that her request was burdensome or broad. A reasonable factfinder could also conclude that GSD made the emails available for inspection and Plaintiff, in an innocent communication error, failed to avail

---

[14] The Court does not find that § 14-2-10 permits a custodian to make an implicit determination that the IPRA request was burdensome or broad. Rather, the Court simply holds that Plaintiff has failed to meet her burden to show that Lujan's April 20, 2016 and May 3, 2016 emails did not comply with § 14-2-10's process for determining a request to be burdensome or broad. Future cases with more developed arguments may compel a different result.

herself of the installment plan offered.  After all, Lujan arguably requested that Plaintiff give him her availability for inspection of the emails on an installment basis, but Plaintiff never did so.  If the factfinder adopted this interpretation of the letter, it could find that GSD did not unreasonably violate the IPRA because it made the emails available to Plaintiff on an installment basis.

The Court appreciates Plaintiff's argument that GSD should have made a greater effort to provide the requested documents to her once she filed an IPRA grievance with the New Mexico Office of the Attorney General, once the Office of the Attorney General informed GSD that it considered GSD in violation of the IPRA, and once she amended her Complaint to add an IPRA claim.  [Doc. 262] at 8.  Nonetheless, in keeping with the New Mexico Supreme Court's admonition that the reasonableness of an IPRA violation generally "must be answered as a matter of fact," *Britton*, 2019-NMCA-002, ¶ 40, the Court will not resolve this dispute in Plaintiff's favor at this time.  For the above reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment on her IPRA claim.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment on Count I: Fair Pay for Women Act and Count III: Inspection of Public Records Act [Doc. 230] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**